# SCREWS ET AL. *vs.* WATSON.

[TRESPASS AGAINST SURETIES ON INDEMNIFYING BOND GIVEN SHERIFF AFTER LEVY OF EXECUTION ON PROPERTY ALREADY IN HIS POSSESSION UNDER LEVY OF ATTACHMENT, &C.]

1. *Trespass; what is, and who are partakers in.*—The seizure and sale by the sheriff of the property of W. without his consent, under pretense of authority of an attachment against the estate of McD., is a trespass on the part of the sheriff, and all those who advise or participate in the seizure *or sale* are co-trespassers with the sheriff.

2. *Indemnifying bond, sureties on; how may be sued, and for what liable.*—The sheriff having an attachment against the estate of McD., levied on the goods of W., and afterwards levied executions on judgments in the attachment suits against McD. on the same property, but refused to sell un-

Screws et al. v. Watson.

less indemnified; whereupon, the plaintiff in attachment, with sureties, entered into an indemnifying bond conditioned "to hold the sheriff harmless from all liability and damage in consequence of the levy,"— *Held*, that the obligors on such bond are liable in an action of trespass to the owner of the property, (where it was sold,) for the value of the property at the *time of its seizure* under attachment, with interest thereon to the time of the trial.

APPEAL from the Circuit Court of Montgomery.
Tried before Hon. JAMES Q. SMITH.

This was an action of trespass by Watson against appellants for the wrongful taking of seventeen boxes of tobacco, &c., the complaint following the form given in the Revised Code, page 677. One of the defendants not having been served, and Crommelin having died after the commencement of the suit, it abated as to them, and the trial was had between Watson and the remaining defendants, but upon what pleas issue was joined is not stated in the record. The evidence shows that on the 4th day of August, 1866, Thomas Crommelin, as administrator of Charles Crommelin, dec'd, commenced suit by attachment against J. R. McDonald, to recover amount due by him for store rent for the year 1865–6. The attachment was levied on the same day, on seventeen boxes of tobacco, which in fact belonged to Watson, but were then in the possession of McDonald, who held them for sale as a commission merchant. At the time of the levy of the attachment, the boxes were in McDonald's store with his individual property. Before the tobacco was removed, McDonald notified the sheriff of Watson's ownership, and called attention to entries in his books showing how McDonald held the tobacco.

On the 31st day of October, 1866, another attachment in favor of same plaintiff, and against McDonald, was levied by the sheriff on the same tobacco, it being then in his possession under the former levy. Judgments were rendered in favor of plaintiff in both of his attachment suits, and on the 7th day of February, 1867, execution on both came to the hands of the sheriff, (who was not sued,) who

levied them on the seventeen boxes of tobacco, but declined selling until he was indemnified by the plaintiff. The bond states its condition to be such, that whereas, Crommelin, administrator, &c., and the other obligors on said bond, did, on the 20th day of February, 1867, place, or cause to be placed, in the hands of the sheriff a certain execution, which is described, against J. R. McDonald, "and have required, or caused to be required, the sheriff to levy said execution on the property of defendant, [naming it] : "Now, therefore, if said Thomas Crommelin, administrator, &c., shall secure and hold harmless said A. H. Johnson, sheriff as aforesaid, from all liability and damages in consequence of such levy, if it shall afterwards appear that the property which may be levied on does not belong to said defendant, or is not liable to said execution, then this obligation to be void, otherwise to remain in full force."

The execution of this bond was the only connection the defendants had with the trespass. After the making of this bond, the sheriff sold the tobacco to satisfy said executions.

The bill of exceptions recites, that a number of witnesses were examined on each side "as to the value of the tobacco at the time of the levy," but the record fails to disclose which of the levies was meant thereby. This was substantially all the evidence.

The court charged the jury as follows:

"1. If you find from the evidence that the seventeen boxes of tobacco were levied upon in the storehouse of J. R. McDonald, under an attachment in the hands of the sheriff of Montgomery county, and was taken by said sheriff and sold under the attachment against J. R. McDonald, and you find that the tobacco levied upon and sold by the sheriff was not the property of J. R. McDonald, but was the property of the plaintiff, Samuel Watson, and that the seventeen boxes of tobacco were in the possession of McDonald, as agent or commission merchant of plaintiff, then your verdict will be for the plaintiff, Watson, for the reasonable value of the tobacco, (seventeen boxes, two hundred pounds each,) at the time of the levy of the attachment, with interest thereon up to date.

"2. If you find from the evidence that an attachment or execution has been issued against J. R. McDonald for the rent of the store-house occupied by him in 1866, which attachment or execution was levied upon seventeeen boxes of tobacco, with other property, and the seventeen boxes of tobacco was the property of McDonald, then your verdict will be for the defendants."

To the first of said charges appellants excepted, and they then asked the court to give the following charges in writing, viz:

"1. If the jury believe from the evidence that the tobacco, for the wrongful taking of which this suit is brought, was levied on by the sheriff of Montgomery county, in the month of August, 1866, under the attachment offered in evidence, and was then taken into posession by said sheriff and was retained by said sheriff in his possession under said levy, until the 26th day of February, 1867, when the defendants executed the bond offered in evidence, and that the defendants, Reid and Screws, (appellants) had no participation in the taking of said tobacco, other than the execution of said bond, the plaintiff can not recover against said defendants (appellants) in this action.

"2. If the jury believe from the evidence that the plaintiff placed the tobacco, for the taking of which this suit is brought, in the possession of J. R. McDonald, for sale on commission, and that said tobacco so remained in the possession of McDonald until it was levied on and taken into possession by the sheriff, under the attachment against McDonald, then the plaintiff can not recover in this action."

The court refused to give the charges asked, and appellants duly excepted.

There was a verdict for the plaintiff, and the defendants bring the case here by appeal, and here assign as error—

1st. The charge excepted to.

2d. The refusal to charge as requested by the defendants.

WATTS & TROY, for appellants.—1. The charge given was

wrong. It makes appellants liable to an action of trespass, whether they had any connection with the sheriff's levy and seizure or not.—*Smiley et al. v. Fahnestock*, 18 Md. 391.

2. The proof shows that the goods of plaintiff were mingled with those of McDonald, so that they could not be distinguished from his; under such a state of facts, the sheriff would not be liable to an action of trespass for levying, although they did not in fact belong to defendants.— *Taylor v. Jones*, 42 N. H. 25.

3. Appellants were not liable in an action of trespass, although they had given a bond of indemnity. The sheriff had committed the trespass (if he committed any at all) several months before the bond was given; and giving such bond could not make them trespassers, although they might be liable in trover for the *conversion* of the property of plaintiff.—*Larkins v. Eckwurzel*, 32 Ala. R. 322; *Carter v. Clark*, 28 Conn. 512; *Talmadge v. Scudder*, 38 Penn. St. 517; *Contrey v. Amis*, 13 Ind. 260.

4. But if appellants did become liable as trespassers by giving the bond of indemnity, when did such liability accrue? Clearly, not until the sheriff, prompted by their giving such bond, did some *act;* it did not accrue until he sold the goods. The bond is conditioned to pay such damrges as the sheriff shall sustain by reason of his levying and selling under an *execution* issued February 7th, 1867, and placed by the makers of the bond in the hands of the sheriff February 20, 1867. The bond itself is dated February 26, 1867, and the sheriff sold on the 1st of March, 1867. The effect of the first charge was to make appellants liable for the *value* of the property on the — day of August, 1866, and for interest on such value from that time. It was, therefore, *wrong.*—See *Lovejoy v. Murray*, 3 Wall.

E. P. MORRISETT, *contra.*—Trespass is the proper form of action. The general property draws to it the possession, sufficient to enable the owner to support trespass, although he has never had possession.—1 Ch. Pl. 169, and note 1; 3 Serg. & Rawle, 512; 7 Term Rep. 12; 7 Conn. 235.

Screws et al. v. Watson.

Property in chattels draws after it possession, and the owner may bring either trespass or trover at his election. 10 Foster, (N. H.) 568; 7 Term R. 9.

There is a material distinction between personal and real property, as to the right of the owner to bring this action.—1 Ch. Pl. 176.

Every person in whom the general property is, may maintain an action of trespass for the taking or injuring thereof by a stranger, although the trespass was committed while the chattel was in the possession of another who had a special property in it.—1 Ch. Pl. 173; 2 Rol. Abr. 569, (P.); 3 Wall. (U. S.) Rep. 1; *Hills v. Hoitt,* 18 N. H.

The actual possession, unaccompanied with the right to the beneficial use and enjoyment of the property, does not take away the constructive possession of the general owner. 2 Greenl. Ev. § 614; 1 Ch. Pl. 188–195.

All persons who direct or assist in committing a trespass are liable as principals, and each of the trespassers is liable for all the injury done.—*Whitaker v. English,* 1 Bay, 15; *Palmer v. Crosby,* 1 Blackf. 142; 3 Wall. (U. S.) Rep. 1; 14 Johns. 406; 8 Wend. 557.

There was no error in the charge given. Crommelin, principal in the indemnifying bond, had caused the levies of the attachments. These parties, Crommelin and appellants, associated together as co-sureties on this bond, and engaged in a common unlawful purpose, are each bound by the acts of the other; each, by construction, or in contemplation of law, was in possession of notice, or knowledge had by either of them, in all matters relating to the common unlawful enterprise for which they are associated; on the principle that the act of one partner binds the firm of which he is a member, or notice to one is notice to all. For, *for the purposes of this co-suretyship on said bond, these parties are partners.* Now, at the time of giving this bond of indemnity to the sheriff, one of the co-sureties, Thomas Crommelin, had notice of a previous levy of attachment upon the goods of appellee, (having himself levied that attachment) which was notice to all his co-sureties.

The subsequent death of Crommelin, by which the suit abated as to him, can not relieve the surviving sureties of the notice which the law has already imputed to them.

If, then, these appellants had this constructive notice of the levy of attachment previously made by the sheriff, they, by this bond, assented to all that had been done by the sheriff, and are equally liable with him for every trespass committed, commencing with the levy of the original attachment, by which appellee was divested of the actual possession of his goods, and ending in their sale by the sheriff.

PETERS, J.—A question very much similar to the main question in this case came before the supreme court of the United States in the case of *Lovejoy v. Murray*, (3 Wall. 1.) In that case, Lovejoy brought suit against Pratt by attachment, and the sheriff levied the attachment on the property of Murray, which was assumed to be the property of Pratt. The sheriff, being in possession of the property thus seized under the attachment, was unwilling to proceed further or to sell under that writ unless he was indemnified. Upon this, the plaintiffs in the attachment executed a bond, in which, reciting that the sheriff had attached and taken possession of the property, they bound themselves to pay all damages. The sheriff then sold the property under the attachment; and then Murray sued the sheriff in trespass for a wrongful seizure and sale of his property on the attachment against Pratt, and recovered a judgment. The sheriff paid a part of this judgment; and Murray then sued the makers of the bond of indemnity for the same trespass, and one of the questions which arose in this latter suit, as stated by Mr. Justice MILLER, was this: "Did the defendants, in giving a bond of indemnity to the sheriff, thereby become liable as joint trespassers with him in the proceedings under the attachment?" In discussing this question he says: "It is sufficient, if they become liable for what was done by the sheriff after they gave the instrument. The trespass complained of was a continuing trespass, and consisted of a series of proceedings, ending

Screws et al. v. Watson.

in the sale of the plaintiff's property under execution."
The principles settled in this case leave it beyond question
that the appellants in this suit, who were defendants in the
court below, are co-trespassers with the sheriff in seizing
and selling the property of the appellee under the proceed-
ings on the attachment against McDonald. It was also
settled in the above cited case of *Lovejoy v. Murray, (su-
pra,)* that, fixing the liability against the sheriff by judg-
ment, also fixed the liability against the parties to the
bond for indemnity. Very clearly, the damages for the
trespass should be a pecuniary compensation for the loss
sustained by the owner of the property wrongfully taken.
This, at the lowest rate, should be the value of the prop-
erty at the time of the trespass, and interest on this value
upon the judgment. When the injured party has obtained
a verdict and judgment for damages for taking goods, the
property is changed and the right to the goods is vested in
the defendant, at least after payment of the judgment.—
*Clark v. Halleck,* 16 Wend. 607; *Woolley v. Kean,* 2 Halst.
85; *Goldsmith v. Stetson & Co.,* 39 Ala. R. 183, 191. The
plaintiff elects to take the damages in lieu of the goods.
In such case, the damages could not justly be less than the
price of the property wrongfully taken, with interest on
that price from the taking. This would be a fair and rea-
sonable compensation for the loss to the owner; and such
compensation is a proper measure of the damages.—Sedg.
on Dam. 29, 30, *et seq.* In this case, the sheriff might have
been sued with the defendants in this action in the court be-
low, and the recovery against him would have been the value
of the goods taken, and interest on it from the conversion.
*Hair v. Little,* 28 Ala. 236. In trespass, the damages must be
the same against all who are found guilty.—*Ridge v. Wil-
son,* 1 Blackf. 410; 28 Ala. R. 236, *supra.* And whether a
party commences a trespass, or comes in after it is begun
and continues to the consummation of its injury in the loss
of the property to the owner, he must be held guilty of the
whole, else several verdicts might be found in the same ac-
tion, which is not permitted.—1 Blackf. 410, *supra; Ellis*

*v. Bitzer*, 2 Ohio, 91. Besides, it is laid down by Sedgwick, in his work on "The Measure of Damages," that "in the actions of tort, case, trespass, trover, replevin, and detinue, the rule is the same, with exception that in the two latter, the law makes a feeble and partial attempt to enforce the return of the specific chattels, for the taking or detention of which the suit is brought."—Sedgw. on Dam. p. 10. In trover, the value of the property, with interest, is the proper rule; and unless there are circumstances of aggravation, it is also proper in such a case as this.—Sedg. on Dam. 529, 530, 531, and cases there cited; *Williams v. Crum*, 27 Ala. 468; *Jenkins v. McConico*, 26 Ala. 213; *Ewing v. Blount*, 20 Ala. 694. The charge of the court below which is complained of does not transcend these limits. It was, therefore, free from error; and for like reasons, the charges asked and refused were properly refused.

The judgment of the court below is affirmed.