# Lienkauf & Strauss *v.* Morris.

*Trespass against Obligors on Bond of Indemnity to Sheriff.*

1. *Exemplary damages; when recoverable generally.*—Exemplary (punitive or vindictive) damages can not be recovered in any case, "on any thing else than gross negligence within the strictest signification of the phrase"—that is, "such entire want of care as to raise the presumption that the person in fault is conscious of the probable consequences of his carelessness, and is indifferent, or worse, to the danger of injury to the persons or property of others."

2. *Damages against indemnitors of sheriff for illegal levy or seizure of goods.* The makers of a bond of indemnity, given to induce the sheriff to levy on goods in the possession of a person who is not a party to the process, may be held liable in trespass for compensatory damages, on the ground that they were co-trespassers with the sheriff in the wrongful act; but, when the evidence does not show that they authorized the sheriff to execute the process wantonly, recklessly, or with circumstances of aggravation, and such authority can not be implied, they are not liable for exemplary damages, unless such acts on the part of the officer were probably consequent on the making of the levy, or were ratified by them.

3. *Measure of damages.*—In trespass for seizing and selling plaintiff's goods, under legal process against another person, the measure of damages is, at least, the value of the goods at the time of the seizure, with interest thereon, to the date of the judgment; and this amount can not be reduced, by deducting the expenses incurred by the officer in the safe-keeping or sale of the goods.

4. *Fraud in sale of goods.*—The validity of a sale of goods is not affected by the insolvency of the seller, nor by the fact that credit was given: to render the sale fraudulent on the part of the purchaser, there must have been an intent on the part of the seller to hinder, delay, or defraud his creditors, and the purchaser must have participated in that intent.

5. *Proof of fraud, by other transactions.*—In trespass against the makers of a bond of indemnity, given to induce the sheriff to levy on goods in plaintiff's possession, as the property of the person from whom he bought them ; the sale being attacked on the ground of fraud, and defendants having adduced evidence tending to show that it was fraudulent, and that the vendor was at the time insolvent; they can not be allowed to prove that, about the time of the levy, which was about a month after the sale, other attachments against the vendor were levied on other goods in his possession, and that said goods were claimed by another person.

APPEAL from the Circuit Court of Marengo.

Tried before the Hon. LUTHER R. SMITH.

This action was brought by Ascher Morris, against Lienkauf & Strauss as partners, Morris Mayer, and Leonard Newhouse, and was commenced on the 11th April, 1879. The complaint as amended, after demurrer sustained to the original, contained two counts; the first claiming $1,750 as "damages for wrongfully taking the following goods and chattels, the property of plaintiff"; and the second claiming the same sum, "for wrongfully causing and procuring one David D. Yeager, the sheriff of Marengo county, to levy an attachment, issued at the suit of said Lienkauf & Strauss, against one A. Steiner, to be levied upon the following goods and chattels, the property of plaintiff." The cause was tried on issue joined on the plea of not guilty, and resulted in a verdict and judgment for the plaintiff, for the full amount of damages claimed. On the trial, a bill of exceptions was reserved by the defendants, in which the facts are thus stated:

"The plaintiff introduced evidence tending to show that, about the 6th December, 1878, Lienkauf & Strauss, defendants in this case, sued out an attachment against the goods of one Steiner, and placed the same in the hands of the sheriff of Marengo county, and requested him to levy the same upon a stock of goods in the possession of plaintiff, and claimed by him; that the sheriff required of them an indemnifying bond, before he would make the levy; that the defendants thereupon executed such indemnifying bond, conditioned to protect the sheriff in levying on such goods, and delivered the same to the sheriff; that one Cole, an agent of said Lienkauf & Strauss, went to plaintiff's store with the sheriff, and caused the sheriff to levy said attachment on the entire stock of goods, worth about one thousand dollars, except about ten or fifteen dollars' worth of jewelry, and 'notions' in a show case, which they allowed him to take away; that neither Lienkauf, nor Strauss, nor any agent of theirs, had ever inquired of plaintiff, prior to the levy of said attachment, in regard to his possession of the goods obtained from Steiner; that neither the sheriff, nor Cole, went into his store, or asked plaintiff any questions about the goods, until they entered to levy the attachment; that they did not then ask him whether any of his goods belonged to Steiner, or to point out the goods which he had obtained from Steiner, but informed him that they levied the attachment upon the goods as the property of Steiner, and, within five minutes, turned him out of the store-house, took possession of all the goods (except the small portion mentioned), and of all his store-

house except a small back room, and cut off all communication between that and the store-room in which the goods were, nailing up the back door of the latter, locking the front door, taking the key, and excluding plaintiff from it; that the sheriff kept possession of said store-room for a month, keeping the goods therein, and then sold the goods at public auction, and paid the proceeds, less some expenses and charges, upon the attachment of Lienkauf & Strauss." "The defendants introduced evidence tending to show that, when Cole and the sheriff entered plaintiff's store to make the levy, Cole asked plaintiff for his invoices, and told him that he had an attachment against Steiner, and that unless plaintiff produced invoices, showing that the goods in the store were his, he would levy the attachment upon them; and that plaintiff replied, that he had no invoices, but that the goods were his property—that he had bought and paid for them; that Cole was a stranger to plaintiff." This was all the evidence adduced, so far as the bill of exceptions shows, relating to the circumstances attending the levy.

In reference to his ownership and purchase of the goods, the plaintiff introduced evidence "tending to show that he had been clerking for Steiner, at Spring Hill, from January, 1877, to August, 1878, Steiner occupying the store-house subsequently occupied by plaintiff; that Steiner ceased to do business at Spring Hill in August, 1878, surrendered the possession of the store to the owner, removed his goods and family to Newbern, twenty-two miles distant, and opened a store there; that plaintiff went with him, as his clerk, and clerked for him there until the last of October, 1878; that Steiner was indebted to him in the sum of about one thousand dollars, for money loaned and wages due, and, in satisfaction of said debt, sold him about one thousand dollars' worth of goods; that plaintiff then rented, for his own account, the same store at Spring Hill, removed the goods there, and commenced business on his own account about November 1st, 1878; that he bought other goods, from other parties, and placed them in his store, and bought and sold goods during the month of November, and until the said levy; that the greater portion of the goods levied on consisted of those bought by him from Steiner, but goods purchased from other parties were also levied on and sold. The defendants introduced evidence tending to show that Steiner was insolvent at the time of the alleged sale by him to plaintiff; that such sale was only a pretense, and was fraudulent; that plaintiff, at the time of the levy, was merely the agent of Steiner, and that all the goods so levied upon were the property of said Steiner. They proposed to prove by a witness, that attach-

[Lienkauf & Strauss v. Morris.]

ments had been levied about December 1st, 1878, upon other goods of Steiner at Newbern, and that such other goods had been claimed by a party in Selma. Plaintiff objected to the introduction of this evidence; and defendants, being asked by the court whether they proposed to connect plaintiff with such other goods or claim, replied that they did not; whereupon, the court excluded said evidence, and the defendants excepted to its exclusion. Defendants introduced evidence, also, tending to show that the larger portion of the goods levied on had been owned by Steiner, and had been in his possession at Newbern; that some of the goods had been sold to Steiner by Lienkauf & Strauss, on a credit, in August, 1878, had then been delivered to him, and had never been paid for; that Cole, when he entered plaintiff's store to levy the attachment, recognized such goods; and that the goods were sold at good prices, at the sale in January, 1879."

"This was all the evidence; and thereupon the court gave, at the written request of the plaintiff," the following charges to the jury: 1. "If the jury find for the plaintiff, they must give him, at the least, the value of his goods seized at the time of the trespass, and interest on such value to the date of the judgment; and they can not deduct from such value the expenses incurred by the sheriff in selling the goods." 2. "If Steiner was indebted to Morris, he had a right to sell him goods at a fair price, in payment of the debt, even though he was insolvent, and unable to pay his other creditors; and he had a right to so sell goods which he had bought of defendants on a credit, and had not paid for them." 3. "If the jury find that the goods belonged to the plaintiff, they may give, in addition to the value of the goods and interest thereon, such amount as they may think proper, not to exceed the whole amount claimed, by way of exemplary damages, if they shall find that the trespass was committed wantonly or recklessly."

These charges, to each of which the defendants excepted, are now assigned as error by them, together with exclusion of the evidence offered and rejected.

JAS. E. WEBB, and J. T. JONES, for appellants.—1. The evidence offered and excluded was admissible, under the facts of this case, for two purposes: 1st, to show the insolvency of Steiner; 2d, to show that the alleged sale of the goods was colorable and fraudulent. It was important to show the insolvency of Steiner, thereby throwing on Morris the *onus* of proving that he paid a valuable consideration for the goods.—*Sparks v. Rawls*, 17 Ala. 211; *Crawford v. Kirksey*, 55 Ala. 282. Where the question of fraud is involved,

[Lienkauf & Strauss v. Morris.]

great latitude is allowed in the range of the evidence.—*Snodgrass v. Branch Bank,* 25 Ala. 161; *Durr v. Jackson,* 59 Ala. 205. An insolvent debtor, attempting to hide out his property from his creditors, very seldom puts it all in the hands of any one person; and the several transfers, occurring about the same time, though apparently separate and distinct, are clearly seen, when brought together, to be parts of one entire scheme.

2. The third charge given by the court contains three material errors. In the first place, it authorizes a recovery against these defendants, as obligors on the bond of indemnity, without any proof as to the amount of the bond, and beyond the amount of its penalty. The penalty of the bond is the extent of their liability. If the plaintiff had recovered in trespass against the sheriff, and the latter had sought reimbursement from the indemnitors, his recovery would have been limited to the penalty of the bond; and the same rule must be applied to an action by the party injured. Any other rule would impose an indefinite liability upon parties, for the performance of a legal act—the execution of a bond authorized by law. Again, the charge does not state the rule correctly as to damages against the officer who makes the illegal levy. He is an officer of the law, and is presumed to do his duty without malice, and without fear or favor; and he is only liable for exemplary damages, when he is not shown to have acted with malice, an intent to injure, or gross aggravation or oppression.—*Rose v. Story,* 1 Barr, 610; *Goetz v. Ambs,* 27 Mo. 28; *Thomas v. Isset,* 1 Jones, 470; Sedgw. Damages, 455, 531; *Sinclair v. Tarbox,* 2 N. H. 135; *James v. Campbell,* 5 C. & P. 372; *Russell v. Irby,* 13 Ala. 131. As to the obligors on the bond, who are the only defendants sued in this action, and who were not present at the time of the levy, their liability rests on the theory, that the sheriff was their agent in making the levy; and the principal is not liable for exemplary damages, on account of the careless, reckless, or wanton misconduct of the agent in the execution of the agency, unless he authorized or ratified it.—Field's Law of Damages, § 93; *Railroad Co. v. Finney,* 10 Wisc. 392; *Wardrobe v. Stage Co.,* 7 Cal. 120; *Lovejoy v. Murray,* 3 Wallace, 1; *Screws v. Watson,* 48 Ala. 625; *Kirksey v. Jones,* 7 Ala. 622; *Del Col v. Arnold,* 3 Dallas, 333; *Keene v. Lizardi,* 8 La. Cas. 26; *Railroad Co. v. McKean,* 40 Illinois, 218; *Morford v. Woodworth,* 7 Indiana, 83; *Moody v. McDonald,* 4 Cal. 297; *Hogan v. Railroad Co.,* 3 R. I. 88; *Harding v. Greene,* 3 E. C. L. 176.

W. E. & R. H. CLARKE, *contra.*—1. The plaintiff's pur-

chase of goods from Steiner was made more than a month
before the levy on the other goods, and the interposition of
a claim to those goods by another person; and there was no
attempt to connect the plaintiff with that claim. The evi-
dence offered was, therefore, irrelevant, as it related to an
entirely distinct transaction. Besides, no act or declaration
of Steiner, made after the sale to plaintiff, would be admis-
sible evidence against the latter, unless he was connected
with it.—*Martin v. Kelley*, 1 Stew. 98; *McKenzie v. Hunt*,
1 Porter, 37; *Weaver v. Yeatman*, 15 Ala. 539; *Price v. Br.
Bank*, 17 Ala. 374; *Strong v. Brewer*, 17 Ala. 706; *Foote v.
Cobb*, 18 Ala. 585; *Johnson v. Br. Bank*, 7 Ala. 379; *Petty v.
Walker*, 10 Ala. 379; *Knox v. Fair*, 17 Ala. 509; *Governor v.
Campbell*, 17 Ala. 566; *Wisdom v. State*, 8 Porter, 511; *Hall
v. State*, 51 Ala. 9.

2. This is not a suit upon the bond of indemnity, nor
could the plaintiff maintain any action upon that bond, which
was only intended for the protection and benefit of the sher-
iff. It would be a singular anomaly, if parties, being about
to commit a trespass, or other illegal act against the rights
of a third person, could, by agreement among themselves,
limit the amount of their liability to him; and yet this would
necessarily follow, if the penalty of the bond is the limit of
the obligors' liability to the plaintiff, the party injured by
their illegal act. If they had given no bond at all, but had
nevertheless incited the sheriff by any other means to make
the illegal levy, they would have been liable as trespassers.
*Murray v. Ezell*, 3 Ala. 148.

3. That the levy was illegal and wrongful, is conclusively
established by the verdict for the plaintiff; and the attend-
ant circumstances, as shown by the evidence set out in the
bill of exceptions, show that it was ordered and made wan-
tonly and recklessly, and was accompanied and followed with
aggravating and oppressive acts. The levy was ordered and
made upon the plaintiff's entire stock of goods, and not
merely upon the goods which he had bought from Steiner;
and this was done without any attempt to separate the
goods, without any inquiry, and without affording him any
opportunity for explanation. If inquiry had been made, and
opportunity for explanation had been given, the plaintiff
might have satisfied these appellants, as he satisfied the jury,
that the goods were his own, and that he had bought and
paid for them in good faith. These precautions would have
been taken by prudent men, and the neglect of them was
wanton and reckless. The action of the sheriff in taking
possession of the store-room also, and in excluding the plain-
tiff from it, was a circumstance of aggravation, but was a

[Lienkauf & Strauss v. Morris.]

necessary incident of the levy, especially as the plaintiff was charged with fraud; and his retention of possession for a month, as proved, must be presumed to have been under the instructions of the appellants, or with their knowledge and acquiescence, since they did not object to the evidence. These facts being before the jury, the liability of the appellants for exemplary damages was directly presented, and the charge of the court asserted a correct proposition. It is admitted that, when a person employs an agent to do a *lawful act*, and injury results from the negligence or tort of the agent in the execution of the agency, the principal having no intent to do the injury, he is only liable for actual damages; in other words, a person is not liable for exemplary damages, when guilty only of mere negligence; and this is the extent of the authorities cited for the appellants. That exemplary damages are recoverable for an illegal act, when done "wantonly or recklessly," as asserted in the charge of the court— or, "when accompanied with circumstances of aggravation;" "gross negligence;" "in a rude, aggravating, or insulting manner," in the language of the adjudged cases—is abundantly established by the authorities.—*Mitchell v. Billingsley*, 17 Ala. 391; *Hair v. Little*, 28 Ala. 236; *Parker v. Mise*, 27 Ala. 480; *Roberts v. Heim*, 27 Ala. 678; *Devaughn v. Heath*, 37 Ala. 595; *Rhodes v. Roberts*, 1 Stew. 145; *Durr v. Jackson*, 59 Ala. 210.

4. When the appellants executed the bond of indemnity, and the sheriff acted under it, they became principals, and joint trespassers with him.—*Screws v. Watson*, 48 Ala. 628; *DuBose v. Marx*, 52 Ala. 506; *Lovejoy v. Murray*, 3 Wallace, 1. As among joint trespassers, or co-trespassers, there is no apportionment of damages according to the degree or extent of their participation in the trespass. As in favor of the party injured, all are equally guilty, without regard to the relations existing between them, whether as principal and surety, or as principal and agent.—*Layman v. Hendrick*, 1 Ala. 212; *Hair v. Little*, 28 Ala. 236; *Allison v. Chandler*, 11 Mich. 542; *Smith v. Gayle*, 58 Ala. 606; *Callison v. Lemons*, 2 Porter, 145; Cooley on Torts, 127, 133, and cases cited; Addison on Torts, vol. 2, pp. 1196-7; 2 Greenl. Ev. §§ 272, 277.

SOMERVILLE, J.—This is an action of trespass brought by the appellee, Morris, against the appellants, who were the obligors in a certain bond of indemnity, executed by them to the sheriff of Marengo county, conditioned to protect him in levying on a stock of goods and merchandise claimed as the property of the plaintiff. The levy was made under a writ of attachment against the goods of one Steiner, who, it was

claimed, had made a fraudulent sale of the stock in question, to the plaintiff. Cole, as the agent of Lienkauf & Strauss, went with the sheriff to the store of Morris, and caused the sheriff to levy on the goods. Two of the appellants, Mayer and Newhouse, are not shown to have any further connection with the transaction, than as being sureties on the indemnity bond. The goods were sold by the sheriff, and are proved to have been worth about one thousand dollars. Under the charge of the court, the jury found a verdict for the plaintiff amounting to seventeen hundred and fifty dollars, in part by way of exemplary (or punitive) damages.

The most important question raised by the record is, the correctness of a charge given by the court, authorizing the jury to find such damages against the appellants. This charge is in the following language: "That, if the jury find that the goods belonged to the plaintiff, they may give, *in addition to the value of the goods and interest thereon,* such amount as they may think proper, not to exceed the whole amount claimed, by way of *exemplary damages,* if they shall find *that the trespass was committed wantonly or recklessly.*"

The proposition is not questioned, that the makers of an indemnity bond may, in a proper case, be held liable for compensatory damages, in an action of trespass, on the ground that they become joint or co-trespassers with the sheriff, in any illegal seizure made by him, under the process for the execution of which he is indemnified.—*Screws v. Watson,* 48 Ala. 628 ; *Lovejoy v. Murray,* 3 Wall. 1.

In *Devaughn v. Heath,* 37 Ala. 595, it was said by Stone, J., "Trespasses might be so *wantonly* or *recklessly* committed, as to justify the imposition of vindictive damages, without any evidence of *actual malice* towards the owner of the property trespassed on." In *Parker v. Mise,* 27 Ala. 480, the principle was stated to be, that exemplary damages might be assessed by the jury, in cases where the trespass was "accompanied with *circumstances of aggravation ;*" and in *Rhodes v. Roberts,* 1 Stew. 145, it was held, that such damages were recoverable, in cases where negligence was "very gross and reprehensible." In no case, however, as we think, can exemplary or punitive damages be recovered, on any thing less than *gross negligence* within the strictest signification of the phrase ; which must be construed to mean "such entire want of care as to raise a presumption that the person in fault is conscious of the probable consequences of his carelessness, and is indifferent, or worse, to the danger of injury to the persons or property of others."—Shearman & Red. on Negl. § 600. In some cases it has been held, contrary, we think, to the weight of authority, that the negligence must be of

such a character as to evince a wanton disregard of human life and safety, equivalent to malice.—*Pickett v. Crook,* 20 Wisc. 377; *Wardrobe v. Stage Co.,* 7 Cal. 118.

In *Quigley's Case,* 21 How. (U. S.) 213, it was said by the Supreme Court of the United States, CAMPBELL, J., as follows: "Redress commensurate to such injuries should be afforded. In ascertaining its extent, the jury may consider all the facts which relate to the wrongful act of the defendant, and its consequences to the plaintiff; but they are not at liberty to go further, unless it was done willfully, or was the result of *that reckless indifference to the rights of others which is equivalent to an intentional violation of them.* In that case, the jury are authorized, for the sake of public example, to give such additional damages as the circumstances require. The tort is *aggravated by the evil motive,* and on this rests the rule of exemplary damages." This case is cited, and the principle approved, by the Supreme Court of Maryland, in *Railroad Co. v. Larkin* (47 Md. 155), 28 Amer. Rep. 442, 443. *Day v. Woodworth,* 13 How. (U. S.) 363, states the rule to be, that smart money is allowable in actions of trespass, "where the injury has been wanton and malicious, *or gross and outrageous;"* and in *Jackson v. Schmidt,* 14 La. Ann. 806, the Supreme Court of Louisiana declared, that such a measure of damages could not prevail where the wrong results from an *error of judgment only.*

In Sedgwick on Damages, mar. p. 455, it is said, that the jury are not bound to adhere to the strict line of compensation, "where fraud, malice, or *oppression* appears." We deduce from the authorities the doctrine to be, that exemplary damages are allowable, not only for acts maliciously perpetrated, but also in cases where one knowingly, wantonly and recklessly does an act fraught with probable injury to person or property, and ultimately producing such injury or damage. 2 Wait's Act. & Def. 448, § 7; *Taylor v. Railway Co.,* 2 Amer. Rep. 229; *Kountz v. Brown,* 16 B. Monr. 577; *Wallace v. Mayor,* 2 Hill, 440; Shear. & Redf. on Neg. § 600. Such a spirit must be considered as at war with that *good faith* which ever preserves a just regard for the lawful rights of others. In *Tracy v. Swartwout,* 10 Pet. 81, which was an action of trover brought for goods illegally seized by the collector of New York, under instructions from the Secretary of the Navy, it was held by the United States Supreme Court, that the defendant was not liable to exemplary damages, but only compensatory damages, because he was a ministerial officer, and acted in *good faith.*—Sedgwick on Dam., p. [506].

These principles apply to the immediate actors who made the levy—the sheriff and Cole—who are not sued in this

action, and to all others who may be proved to have acted in concert with, or participated in their acts. The levy of the process, it is true, was authorized by. the appellants, when they signed the bond of indemnity; and, to a certain extent, all of them may be considered as principals in the trespass, if such it be. But the evidence does not disclose any authority from appellants to execute the writ wantonly, recklessly, or with circumstances of oppression or aggravation. Unless such authority can be implied, or the unlawful acts were ratified, or were probably consequent on the making of such levy, as against them, under the circumstances, compensatory and not exemplary damages would. be the measure of recovery.—Law of Damages (Field), §§ 86–88; *Rounds v. R. R. Co.*, 21 Amer. Rep. 597.

How far a principal is liable in exemplary damages for the acts of his agent, is a question about which there is the utmost contrariety, and not a little confusion of authority. This results, we think, to some extent, from a failure to classify the cases, many of which have been decided upon principles of public policy. The rule has gradually grown more stringent as against common carriers, and especially railroad companies, on the ground that public policy, and the safety of the travelling public, require that they should not only exercise the highest degree of care in the conduct of their affairs, but should even "guarantee that none of their servants should commit crimes."—Field's Law Dam. § 87, *note* (2); Bigelow's Lead. Cases on Torts, 35. Some of these cases have carried the rule to an unreasonable extent, not justified by principle, nor required by necessity.—*Craker v. R. R. Co.* (36 Wis. 657), 17 Amer. R. 504; *Goddard v. R. R. Co.* (57 Mo. 202), 2 Amer. R. 39.

The following language is used in Field's Law of Damages, on this subject: "To hold the principal, in such cases, for exemplary damages, is against the general principles of the law of exemplary damages, and violates the sense of justice." "Many of the decisions," he adds, "are not clear as to the basis of the opinions that seem to support the doctrine of liability of the principal to exemplary damages in such cases. Of course, if the principal has employed incompetent agents, or has knowledge of their incompetency, or knowingly permits such negligence in them, it would make him a party thereto; or, if he indorses such acts of negligence in the agent, he might properly be held liable in case of injury therefrom, for exemplary damages."—§ 87. It is added, in Bigelow's Lead. Cases on Torts, p. 35, that "the negligence or misconduct of an agent, for which the cases hold the principal liable, probably never involves any *deep moral turpitude.*

If the conduct of the agent were of such a character, the principal would not be held liable."

The case of "*The Amiable Nancy*," 3 Wheat. 446, illustrates the principle in question, being an action of trespass against the owners of a privateer, for an illegal and wanton seizure made by the officers and agents in charge. Mr. Justice Story held them liable only for actual, and not punitive damages, using the following language: "This is a case of gross and wanton outrage. The honor of the country, and the duty of the court, equally require that a just compensation should be made to unoffending neutrals, for all the injuries and losses actually sustained by them. And if this were a suit against the original wrong-doers, it might be proper to go yet farther, and visit upon them, in the shape of exemplary damages, the proper punishment which belongs to such lawless misconduct. But it is to be considered, that this is a suit against the owners of the privateer; they are innocent of the demerit of the transaction. Under such circumstances, we are of opinion that they are bound to repair all the real injuries and personal wrongs sustained by the libellants, but they are not bound to the extent of vindictive damages."

In the case at bar, there is no evidence showing that the appellants, Mayer and Newhouse, acted with any want of *good faith*, or otherwise than in the honest belief that plaintiffs in attachment were seeking a redress of lawful rights by lawful means. This consideration is of the highest import as affecting the question of exemplary damages. The agent selected was an officer of the law, who would presumptively do his duty only, without oppression, aggravation, or excess of authority. How far the participation of Cole in the acts of the sheriff would bind Lienkauf & Strauss, for anything more than compensatory damages, depends upon the extent of his authority; and this would be a matter for the determination of the jury, uninfluenced by prejudice or passion, under the principles of law above enumerated.—*Sterrett v. Kaster*, 37 Ala. 366; Sedgwick on Dam., pp. 506, [528–9]; *Rose v. Story*, 1 Barr, Penn. St. 191.

The court erred in giving the charge under consideration; and for this the judgment of the Circuit Court must be reversed.

The rule stated by the court, as to the proper measure of damages, was correct, as given in the first charge. If the jury found for the plaintiff, the least amount of their verdict must have been the value of the goods seized, which were to be estimated at the time of the trespass; and upon this interest should be calculated, to the date of the judgment. It

[Kirkland v. Trott.]

was not permissible to reduce or mitigate these damages, by deducting the expenses of the wrong-doer incurred in selling the goods, or otherwise in perpetrating the tort complained of.—Sedgw. on Damages (6th Ed.), 653 ; 23 Me. 272 ; 6 Watts & Serg. 323.

The insolvency of Steiner did not affect the validity of the sale, nor did the fact that the goods were sold on credit. He had a right to make such sale, at a fair and reasonable price ; and it would not be fraudulent, unless there was an intent on his part to hinder, delay, or defraud his creditors, and this intent was participated in by the vendee, Morris. The second charge given by the court, as tested by this principle, was correct.—*Crawford v. Kirksey*, 55 Ala. 282 ; *Young v. Dumas*, 39 Ala. 60 ; Bump on Fraud. Conv. 234–5.

There was no error in excluding the testimony of the witness who proposed to prove that attachments had been levied upon other goods of Steiner which were claimed by a party in Selma. This evidence was irrelevant to the issue submitted to the jury.

The judgment of the Circuit Court is reversed, and the cause remanded.