# Lavretta *v.* Holcombe.

*Action against Sheriff for Failure to Make Money on a Venditioni Exponas.*

1. *Section 2963 of Code construed.*—Under Code, § 2863, which provides that "when a doubt exists as to the title of the defendant to personal property which the sheriff is required to levy upon, he may demand indemnity from the plaintiff;" the sheriff who has levied an attachment may afterwards demand an indemnity before proceeding to sell it.

2. *Section 2905 of Code construed; when sheriff may require indemnity.* Code, § 2905, which provides that "when a reasonable doubt exists whether property levied on belongs to the defendant the sheriff may require a bond of indemnity, and if it is not given he may restore the property," applies as well to the case of a sheriff acting under a writ of *venditioni exponas* as under a writ of execution.

3. *When immaterial whether plaintiff is an incorporation or a mere association.*—Where in an action against a sheriff for not executing a writ of *venditioni exponas*, the sheriff attempts to show that the property was claimed by a certain club, it is immaterial whether such club was a corporation or a voluntary association, since in either capacity it might own the property.

4. *Evidence of voluntary association; when can not be objected to.*

[Lavretta v. Holcombe.]

Where the plaintiff has had evidence as to the incorporation of the club excluded, he can not object to proof of its being a voluntary association.

5. *Proof of character of club.*—In order to prove the character of the club as a voluntary association, it is proper for a witness to testify that he had been elected president of the club, and had acted as such president.

6. *How private paper proved.*—An affidavit presented by the club to the sheriff for the purpose of informing him of its title, may be proved by the testimony of the affiant, since it is a mere private paper not required by law to be made, and not the foundation of any claim involved in the suit.

APPEAL from the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

This was a suit by John L. Lavretta to recover of Wm. H. Holcombe, the sheriff of Mobile county, the amount remaining unpaid on a *venditioni exponas*, which was placed in his hands for collection, and which was issued in an attachment suit brought by the said Lavretta against one Moraquez, his tenant. The complaint alleged that the sheriff had levied upon sufficient property to satisfy the claim, and had illegally discharged from the levy some portion thereof, leaving an unsatisfied balance due the plaintiff. It was shown that the sheriff had levied an attachment upon certain property found in the building occupied by said Maraquez, and which, under one aspect of the evidence, belonged to him at the time he leased the premises from Lavretta, but which he subsequently sold to the *El Cosmopolitano* Social and Literary Club. After the sheriff had taken the property under the attachment writ, but before a sale, he was notified that some of the property levied upon was claimed by said club. He thereupon made demand upon the plaintiff, Lavretta, for an indemnifying bond as to that part of the property, and upon Lavretta's failure to give the bond, the property claimed by the club was released.

The defendant filed a number of pleas all of which, with varying phraseology, set up that after he had levied on the property and was about to sell under the writ in his hands, a portion of the property was claimed by affidavit as the property of the Cosmopolitano Club, and that he had a reasonable doubt whether said property was subject to said levy, and that he had therefore demanded an indemnifying bond from the plaintiff, which was refused. To these pleas the plaintiff demurred. The demurrers were overruled, and this action of the court is the chief ground of error assigned in this court. Other questions arose on the trial, alluded to in the opinion of the court, which are unimportant in the view of the case taken by this court.

GREGORY, L. & H. T. SMITH, for appellants.—The statutes of Alabama have undertaken to create an entire and distinct system of attachment proceedings and to deal with the entire subject, and therefore to supercede and repeal all common law and ancient customs in regard thereto.—Southerland on State Const., sec. 164, *et seq.* Whether, therefore, the sheriff is, or is not, entitled to demand indemnity after he has levied an attachment upon property, but before he makes a sale of it, must depend upon the terms of our statute upon that subject. The statute provides that, "when a doubt exists as to the title of the defendant to personal property *which the sheriff is required to levy upon,* he may demand indemnity from the plaintiff."—Code of 1886, section 2963. Nothing whatever is said about his demanding indemnity when a doubt arises *after the levy has been made.* The mention of the one instance in which an indemnifying bond may be demanded, by implication excludes all others. This is not a case of an unintentional omission in the statute, for, as early as 1824, and from that day to this, it has been, and is, expressly provided that when a doubt arises *either before or after* the levy of an execution, the sheriff may demand a bond of indemnity before proceeding with the levy, or with the sale, as the case may be.—Code of 1886, section 2905. Originally, the statute relating to executions, allowed the demand for indemnity to be made at any time after levy, but made no provision for a demand before levy, (see Toulmin's Digest), but it was subsequently changed to cover both cases. A good reason may, or may not, exist for the difference of the statute in regard to the two cases, but that the difference exists cannot be denied. The law is so written by the legislature, and it is not for the courts to change it. There is a difference between the commencement of an attachment suit, and the commencement of a suit by summons and complaint deduced by the courts not from the exact language of the statute, but from the nature of the remedies. It is in the venue of the suit. The statute providing that no person shall be sued outside of the county of his residence, held not to apply to a suit commencing by attachment.—*Herndon v. Givens,* 16 Ala. 261.

The court allowed a witness to testify that he had been elected president of the association by the minutes of the club. These minutes were the best evidence of their contents, and were not shown to be lost, destroyed, or beyond the jurisdiction of the court, and secondary evidence of their contents was not admissible.—3 Brick. Dig. 439, 486. A witness was further allowed to prove the execution of an

[Lavretta v. Holcombe.]

affidavit by himself, and by proof of the handwriting of another. The affidavit was not one authorized by law, but was intended merely as a private memorandum of the notice given to the sheriff of a claim of ownership of property. It purported to be sworn to before a justice of the peace, and by him certified. This certificate constituted the justice of the peace a subscribing witness to the execution of the notice.—*Sharpe v. Orme,* 61 Ala. 263; *Rogers v. Adams,* 66 Ala. 600. And where a private paper is executed before a subscribing witness, execution cannot be proven by any other witness, unless it be first shown that the subscribing witness is dead, or out of the jurisdiction of the court.—*Ellison v. State,* 69 Ala. 1; *Patterson v. Kicker,* 72 Ala. 406; *Jenks v. Terrell,* 73 Ala. 238; *Askew v. Steiner,* 76 Ala. 218.

CLARK & CLARK, for appellees.—1. The only question to be decided in this case is the right of the sheriff to have demanded an indemnifying bond under the circumstances shown in the bill of exceptions, and on the failure of plaintiff for ten days to give the same to discharge the levy upon the property claimed by other parties, and as to the title of the defendant he had a reasonable doubt.

The sheriff was justified in his action by both sections 2905 and 2963 of the Code of Alabama. These sections while differing in phraseology, are essentially the same in effect.— *Ogden v. Powell,* 7 Ala. 243; *Betancourt v. Eberlin,* 71 Ala. 461; Burrill's Law Dict., "Execution;" Bouvier's Law Dict. "Venditioni Exponas;" *Screws v. Watson,* 48 Ala. 628. As to proof of affidavit submitted to sheriff, claiming some of the attached property as belonging to the C. Club, the rule as to proof by attesting witness, as laid down by Supreme Court in 76 Ala. 218–221, is cited.

HARALSON, J.—1. The plaintiff, Lavretta,—appellant here—sued out an attachment against Moraquez, returnable to the City Court of Mobile, placed it in the hands of the sheriff, Holcombe—appellee here,—who levied it on personal property supposed to belong to the defendant in attachment. The suit was prosecuted to judgment in said court, for the sum of $478.24 and costs; the property levied on was condemned to be sold for the satisfaction of the judgment, and a writ *venditioni exponas* issued and was placed in the hands of the defendant, as sheriff, who advertised it for sale, and on the day of the sale, and before it came off, and the property which had been levied on was about to be sold under that writ, one Gerald, as president of the "Cosmopolitano Club,"

[Lavretta v. Holcombe.]

by his affidavit, made claim to a part of said property as
being the property of said club and not of the defendant in
execution; and defendant, having reasonable doubt whether
the property he had levied on, which was claimed by said
club, belonged to the defendant in attachment, and was liable
to levy and sale under said writ, notified the plaintiff of this
claim and of his reasonable doubt as to the ownership of
the property, and required of him a bond of indemnity,
before proceeding to sell that portion of it which was
claimed by said club; and plaintiff refused to give a bond of
indemnity, and after ten days from the time he required said
bond—no bond having been given—defendant released that
portion of it which was so claimed, and sold and accounted
for the balance.

2. The main question in the case is, whether the sheriff,
having levied the attachment on the property, could *after-
wards* demand an indemnity, and if not given in ten days
from the demand, release it.

Section 2963 of the Code provides, "When a doubt exists
as to the title of the defendant to personal property which
the sheriff is required to levy upon, he may demand indem-
nity from the plaintiff." This statute does not say that the
doubt referred to, to authorize a demand for indemnity, must
exist before the levy is made; and it would certainly be a
narrow construction and one directly against the policy of
the law, to so interpret it. It was to relieve him of the peril
under which he proceeded in such cases, at common law,
that the statute was passed. The rule was a harsh one
which required him to proceed, as the agent of the plaintiff
in making his money, and run all the risk of a mistake in so
doing; and so, in the suggestions of a better and juster policy,
this statute was passed. Often, attachments are necessarily
hurriedly levied, without opportunity to investigate the own-
ership of property on which levies are required to be made,
and when claims to it are not generally ascertained, until
after a levy; and to hold that a sheriff, in this race of dili-
gence he runs for plaintiff, because he did not know of the
danger ahead of him, before he started, can not stop, but
must go right ahead, when he finds it out, puts him in no
better position for protection with, than without the statute.
It is reasonable and fair to hold, that he may demand
indemnity, under this statute after, as well as before the
levy, and, if not given, he is not bound to sell. If a sacrifice
is to be made at this point, better the plaintiff than the
sheriff.—*Screws v. Watson*, 48 Ala. 628. In this case, the
sheriff having an attachment against the estate of McDon-

ald, levied on the goods of Watson, and afterwards, when judgment had been obtained against McDonald in the attachment suit, execution issued and was levied on the same property, on which he had levied the attachment, but he refused to sell unless indemnified. And the obligors on that bond were held liable on it, a result that could not have been reached, if it had not been lawful to demand indemnity, after the levy of an attachment.

3. But this case finds relief under another section of the Code—2905—which is in a different title, article and chapter from the one to which we have just been referring. The article under which this section—2905—comes, relates to "Levy, Sale and Return; *Venditioni exponas* and Conveyance." Its provisions refer to writs of *venditioni exponas*, as well as to writs of execution. These provisions are, "When a reasonable doubt exists whether the property levied on, (it does not say under execution), belongs to the defendant, or whether the property alleged to be his is subject to levy and sale, the sheriff may require of the plaintiff, his agent or attorney, a bond of indemnity; and, if it is not given, within ten days thereafter, he may restore the property to the defendant, if levied on, or decline to levy, if one has not been made."

There is but little difference in fact, and none in legal effect, in an execution and a *venditioni exponas*. The one is an order to seize *any* property the sheriff may find which belongs to the defendant and sell it, to satisfy the judgment on which it issued; the other is an order to sell particular property already seized and in the hands of the officer, to satisfy the judgment on which it issued. They are the means of accomplishing the same end—the satisfaction of the judgment. The officer levying and selling is exposed to the same hazards, against which it is the policy of the law to shield him, in proceeding to accomplish this result, so beneficial to the plaintiff, whether under the one or the other. It would not hurt him any more, to be ruined in making the money for a plaintiff under a *venditioni exponas*, than under an execution, and the legislature knew that, when it made said section of the Code broad enough to cover the sheriff, whether he acts in making a levy under one or the other writ.

4. When the plaintiff recovered his judgment, he might have issued execution on it, against the property, generally, of the defendant, and coming to the hands of the sheriff, he might have levied it on the property already levied on, and in his hands under the attachment, and thereby have en-

forced his lien as effectually as by a *venditioni exponas*. In that case, who denies, if doubt had risen as to the defendant's ownership of the property, he would have had the right to demand indemnity? And what reason can be assigned, why he should not have the same right, when proceeding under *venditioni exponas?*

Applying these principles to the demurrers to the 8th and 9th pleas, we must hold they were rightly overruled.

5. In the course of the trial, an effort was made, by the defendant as is stated, to establish that the Cosmopolitano Club, which claimed the part of the property levied on, was a corporation, and for that purpose, offered in evidence the incorporation book, kept in the office of the judge of probate, and the proceedings touching the organization of said Club, as found in said book, but they were ruled out, on the motion of the plaintiff, "because they did not show a corporate organization as required by law." It could have served no indispensable purpose, to show that the Club was organized, for an unchartered association of individuals, styling themselves the "Cosmopolitano Social and Literary Club," could have owned the property levied on, and made claim to it, as well as if they had been incorporated. Having objected to defendant proving the corporate existence of said Club, the plaintiff could not well object to proof of a voluntary association of individuals under that name, and the objection to the question propounded to the witness, L. B. Gould.—" 'Do you know whether or not several people, or a number of people, acted together, and claimed to be a Club under the name of the 'El Cosmopolitano Social and Literary Club,' " was properly allowed, the other evidence tending to show that this Club made claim to a part of the property levied on, which the sheriff demanded indemnity to sell. For the same reasons, the question propounded to and answered by the same witness, which constitutes the basis for the 5th assignment of error, was allowable.

6. The statements of said witness, that he had been elected as president of the Club, as shown by its minutes and that he was, in May, 1889, and prior thereto, acting as the president of an organization or a society of gentlemen, designating themselves, the "El Cosmopolitano Social and Literary Club," were very proper to be answered. They tended to show a voluntary organization under that name, which claimed this property, and that the claim was not simulated but real. The question propounded was, "if he claimed to be an officer of that Club?" The answer was, "that he did not claim to be an officer thereof, but that he

had been elected as the president of the Club, as shown by the minutes." Whether the minutes of the Club showed he was elected or not, was immaterial, if he acted, and the statement of the witness was about a collateral fact, which was also a collective fact, to which he was competent to testify, as much so as when a witness testifies he executed a deed or brought a suit.

7. We have held that a defective certificate of acknowledgment of a conveyance may, from necessity, operate as the formal attestation of a witness, to prevent the instrument from being inoperative as a conveyance. *Carlisle v. Carlisle*, 78 Ala. 544; *Rogers v. Adams*, 66 Ala. 600; but, that is in a case, where the instrument, to have any legal effect, must be acknowledged or attested, and to save a conveyance which the parties intended to make, the magistrate who takes a defective acknowledgment, is allowed to be converted into a subscribing witness to the conveyance.

The affidavit, the proof of the execution of which, in the form it was allowed,—made the basis of an exception,—was a private paper, one which the law does not require to be made. It was a mere notice to the sheriff of the claim of the El Cosmopolitano Club to a part of the property he had levied on, forbidding him to sell it. We are not informed it was made as the basis of a replevy; and on the presentation of this claim, as the bill of exceptions states, a release of the levy of the property described in the affidavit was demanded of the sheriff in behalf of said Club. To make the claim appear to be *bona fide*, no doubt, it was sworn to. The Notary Public before whom it was sworn, is not, properly speaking, a subscribing witness to it, and it is not necessary, now, so to decide. But, if the notary were the attesting witness, the paper is not the foundation of the right and title of the Club to the property, the sale of which, by the paper, it forbade; but it is "merely collateral, or *inter alios*, under or from whom neither party seeks to claim any right or interest." *Askew v. Steiner*, 76 Ala. 221. And so, the witness, Gould, was properly allowed to prove his own signature and that of Jno. Marquez, the other maker of the written claim. This view of the case disposes of the remaining assignments of error.

We find no error in the record, and the judgment of the City Court is affirmed.

Affirmed.