# Bolling *v.* Tate.

*Action on Injunction Bond.*

1. *Counsel fees as damages.*—In an action on an injunction bond, conditioned as the statute prescribes (Code, § 3871), counsel fees are recoverable as a part of the damages, for services rendered in this court on appeal, as well as in the court below. (Overruling *Ferguson v. Baber,* 24 Ala. 402; and *Bullock v. Ferguson,* 30 Ala. 227.) But the recovery is limited to fees for services rendered, in either court, in procuring the dissolution of the injunction, and does not extend to all the services rendered in the suit in which the injunction was sued out.

2. *Condition of bond.*—An injunction bond, conditioned to pay "all damages which any person may sustain by the suing out of said injunction, *if the same is dissolved by the said Chancery Court,*" is to be construed as if it were conditioned, in the language of the statute which was of force when it was executed, to pay "all damages which any person may sustain by the suing out of such injunction, *if the same is dissolved*" (Code, § 3871), and binds the sureties on a dissolution of the injunction by this court, on appeal from an interlocutory order refusing to dissolve it.

3. *Depreciation of mortgaged property pending injunction of sale.*—When an injunction is obtained, restraining the sale of property under a power contained in a mortgage, and it is afterwards dissolved; in an action on the injunction bond, the depreciation in the value of the mortgaged property while the injunction was of force, causing it to sell for less than the amount of the secured debt, is recoverable as a part of the damages sustained.

4. *Travelling expenses in attending sale.*—The plaintiff's travelling expenses in attending the sale of the mortgaged property, after the dissolution of the injunction, coming from Pensacola, Florida, to Greenville, Alabama, "are but an accident of the particular case," and can not be recovered as a part of the damages in an action on the injunction bond.

5. *Liability of sureties.*—In an action on a penal bond, the liability of the sureties is the same as that of the principal; and when they are sued alone on the bond, the fact that they are sureties should exert no influence in the assessment of the damages.

APPEAL from the Circuit Court of Butler.

Tried before the Hon. J. W. POSEY, an attorney of the court, selected by the parties on account of the disqualifi-

cation of the presiding judge, who was related to one of the parties.

This action was brought in the name of the register in chancery, suing for the use of Walter Tate, against Samuel J. Bolling and Henry M. Caldwell, sureties on an injunction bond for Holden Evans; and was commenced on the 31st October, 1877. The condition of the bond was in these words: "*Whereas*, Holden Evans has this day filed his bill of complaint in the office of the register in chancery at Greenville, Alabama, against Walter Tate, praying, amongst other things, that the said Tate, his agents or attorneys, be restrained by an order of injunction of this court, from making sale of a certain mill, named and mentioned in a certain mortgage made an exhibit to said bill of complaint: Now, therefore, the condition of the above obligation is such, that if the above-bounden Holden Evans, S. J. Bolling, H. M. Caldwell, and John T. Milner, executors, administrators, or any of them, shall and do well and truly pay, or cause to be paid, all damages which any person may sustain by the suing out of said injunction, if the same is dissolved by the Court of Chancery, on the bill filed by said Holden Evans as aforesaid, then the above obligation to be void," &c.

The complaint set out the condition of the bond, and alleged, as a breach thereof, that the writ of injunction, obtained by the execution of said bond " remained in full force and effect until the 13th July, 1876, when the same was dissolved and wholly terminated by the judgment and decree of the Supreme Court of Alabama in said cause, on appeal from said Chancery Court; yet said defendants have not, nor has the said Evans, paid the damages which the said Walter Tate has sustained by the suing out of said injunction;" and the damages specially claimed were—1st, on account of the depreciation in the value of the mortgaged property, from the 20th March to the 13th July, 1876, during which time the injunction was in force and the sale stayed, said Evans being and continuing insolvent; 2d, counsel fees for services rendered in the injunction suit, and to procure the dissolution of said injunction by said Supreme Court, and for services rendered in such defense, and on said appeal, and in the prosecution of this suit;" 3d, costs incurred in said suit, and on said appeal; 4th, "necessary expenses in travelling from, and returning to his home, in Pensacola, Florida, while engaged in and about the defense of said suit, and in consequence of said injunction."

The defendants demurred to the complaint, on account of the insufficiency of the breach assigned, in alleging that the injunction was dissolved by the Supreme Court, and not that

[Bolling v. Tate.]

it was dissolved by said Chancery Court. They demurred, also, to "that part of the complaint which claimed damages for costs of the Supreme Court, and for counsel fees to procure the dissolution of said injunction by said Supreme Court, because the same is too remote, and is not within the legal terms and conditions of the bond, and is not the natural and proximate consequence of the injunction or dissolution"; also, to "that part which claims damages on account of the depreciation in the value of the mortgaged property, from the 20th March to the 13th July, 1876, because such depreciation is not the natural and proximate consequence of the suing out of the injunction, and is too remote, and is not recoverable under the terms and condition of said bond." The court overruled the demurrers, except as to the claim of damages for costs and counsel fees incurred in the Supreme Court, and sustained it as to that ground ; and the complaint was then amended by striking out the averments as to such costs and counsel fees. The defendants then pleaded, "in short by consent, 1st, the general issue" ; 2d, "in answer to the damages claimed on account of the alleged depreciation of the mortgaged property," that the mortgage was paid in full and satisfied, when the injunction was dissolved, and also when it was sued out ; 3d, such payment and satisfaction of the mortgage, "in answer to the damages claimed in the first breach assigned" ; 4th, and 5th, set-off of debts due and owing to said Evans by defendants, and pleaded by consent of said Evans. The court overruled a demurrer to the plea of set-off of an open account, and issue was then joined on all the pleas.

On the trial, each party reserved exceptions to the rulings of the court on questions of evidence, and also in the matter of charges given and refused ; and their exceptions are noted in the same bill. The defendants objected to the admission of evidence showing the depreciation in the value of the mortgaged property, between the day on which the sale was enjoined, and the day on which the sale was made after the dissolution of the injunction ; also, to the admission of the bond, the proceedings in the injunction suit, and the certificate of reversal from this court ; and they reserved exceptions to the overruling of these objections. The plaintiff offered to prove "that he had been compelled to pay, and had paid, the costs of his appeal in the Supreme Court and in said Chancery Court, on his appeal from the order of the chancellor refusing to dissolve the injunction, and the amount of said costs" ; also, "the value of the services rendered by his counsel in procuring the dissolution of said injunction by the Supreme Court"; but the court excluded this evidence

[Bolling v. Tate.]

as offered, on objection by the defendant, and the plaintiff excepted. The plaintiff offered to prove, also, "that his necessary expenses in coming from his home in Pensacola, Florida, to Greenville, Alabama, to make the sale under the mortgage on the 26th August, 1876, and in returning to his home after said sale, was $20"; but the court excluded this evidence, on motion of defendants, "as not being a part of the proximate damages caused by the injunction"; to which ruling the plaintiff excepted. Evans testified, as a witness for the defendants, among other things, "that defendants signed said bond as sureties for him, and at his request; that they were sureties, and only sureties on said bond." The plaintiff objected to this evidence, "because the same was illegal and irrelevant," and he reserved an exception to the overruling of his objection.

The court charged the jury, among other things, that if the injunction was dissolved by the Supreme Court on appeal, this was within the condition of the bond, so far as concerned the liability of the defendants, equally as if the dissolution had been by the Chancery Court; and that the plaintiff, if entitled to recover in the case, "was entitled to recover the depreciation in the value of the property, from the issue of the injunction to its dissolution, or, perhaps, to the sale." To each of these charges, with others, the defendants duly excepted. The plaintiff reserved an exception to a charge, given by the court on the request of the defendants, as to the manner in which they were to ascertain the depreciation of the mortgaged property.

The appeal is sued out by the defendants, who here assign as error all the adverse rulings of the court on the pleadings and evidence, as above stated, and in the charges given and refused; and by consent, entered on the record, the plaintiff also assigns as error all the rulings adverse to him.

JOHN GAMBLE, for the defendants below.—The condition of the bond sued on is not the condition prescribed by the statute (Code, § 3869), but is more limited: it is not "on the dissolution of the injunction" simply, but on its dissolution "by the said Chancery Court on the bill filed by the said Evans." If these words had been struck out, or the statutory words substituted for them, it would have been a material alteration of the bond, and would have discharged the sureties, unless done with their consent. The contract of sureties is *strictissimi juris*. They have a right to stand on its precise terms; and any material alteration, "whether it consists in the amount of the obligation, or in the time or manner of performing it," discharges them.—*McKay & McDonald*

[Bolling v. Tate.]

v. *Dodge & McKay,* 5 Ala. 588 ; *Haden v. Brown,* 18 Ala. 641;
*Johnston v. Flint,* 34 Ala. 673 ; *Bang v. Strong,* 7 Hill, 250 ;
*Miller v. Stewart,* 9 Wheaton, 681 ; *United States v. Boyd,*
15 Peters, 187 ; *McMichael v. Webb,* 6 Howard, 292 ; *Leggett
v. Humphries,* 21 Howard, 66 ; *Smith v. United States,* 2 Wallace, 219 ; *Kellogg v. Stockton,* 29 Penn. St. 460 ; *McCloskey v.
Cromwell,* 1 Kernan, 598 ; *Bankhead v. Brown,* 5 Hill, N. Y.
635 ; 3 Kent's Com. 183, 3d ed.; *Wright v. Johnston,* 8 Wendell, 512 ; *Hunt v. Smith,* 17 Wendell, 179 ; *Dobbin v. Bradley,* 17 Wendell, 422 ; *Walworth v, Thompson,* 2 Comstock, 540;
*Lewis v. Dunn,* 6 Selden, 469 ; 1 Penn. C. C. 305 ; *United
States v. Hillegos,* 3 Wash. C. C. 70 ; 4 *Ib.* 678 ; 37 Maine, 102 ;
1 Eng. L. & Eq. 1; 27 *Ib.* 304 ; 2 Parsons on Contracts, 17 ;
10 Johns, 180.

HERBERT & BUELL, *contra.*—In the construction of contracts, to determine the intention and obligation of the parties, the same rule applies alike to principal and surety. It
cannot be construed to mean one thing as against the principal, and another and different thing as against the sureties ;
but it must receive a reasonable interpretation, according to
the intention of the parties, as disclosed by the instrument,
when read in the light of the surrounding circumstances, and
the purposes for which it was made.—Brandt on Suretyship,
106–08 ; *Levy v. Taylor,* 24 Md. 282 ; 2 Parsons on Contracts,
499–505, 5th ed.; 1 Brick. Dig. 386, §§ 161–66. The bond
shows on its face the purpose for which it was executed ;
and when read in connection with the existing statutory provisions, with notice and knowledge of which the parties are
chargeable, and with the results effected by it, the parties
must be presumed to have contemplated and provided
against an eventual dissolution of the injunction, whether
by the chancellor in the first instance, or by this court on
appeal.—*Reusch v. Demass,* 34 Mich. 95 ; *Hanna v. Petroleum
Co.,* 23 Ohio St. 622; *Watts v. Waddle,* 6 Peters, 389 ; *Seacord v. Morgan,* 3 Keyes, N. Y. 636; *Jordan v. Agawam
Woollen Co.,* 106 Mass. 571 ; *Sherry v. State Bank,* 6 Ind. 397,
A literal construction of the bond would relieve the sureties
from liability, if the injunction had been dissolved by the
chancellor in vacation, and not by the court in term time ; a
construction which could hardly be contended for. As to
the damages recoverable, see *Mysenberg v. Schlieper,* 48 Mo.
426 ; High on Injunctions, 964, 967, 971, and cases cited;
*Holmes v. Weaver,* 52 Ala. 516.

STONE, J.—The present suit was brought by Tate, against
the sureties of Evans, on the injunction bond which was

executed by the latter, to obtain the injunction which was dissolved by the order of this court, in *Tate v. Evans*, 54 Ala. 16. To obtain an injunction, such as was granted in that cause, the party applying is required by the statute to give bond, " conditioned to pay all damages which any person may sustain by the suing out of such injunction, if the same is dissolved."—Code of 1876, § 3871. The condition of the bond given, sued on in this action, is to pay " all damages which any person may sustain by the suing out of said injunction, if the same is dissolved by the Court of Chancery, on the bill filed by the said Holden Evans as aforesaid." There was a demurrer interposed to the complaint, assigning grounds. One ground assigned was, that the complaint failed to show a liability, in this, that defendants had only bound themselves to pay damages, if the injunction was dissolved by the Chancery Court, and the complaint contained no averment that the Chancery Court had dissolved the injunction. The dissolution was by the order of this court, rendered on appeal from the interlocutory decree of the chancellor refusing to dissolve ; and such is the averment of the complaint.

We have several decisions of this court, bearing on the question of the liability of the makers of injunction, and other kindred bonds, and the extent of such liability. *Ferguson v. Baber*, 24 Ala. 402, was a suit on a bond in a detinue suit, given by the plaintiff to obtain a seizure of the chattels sued for. The effect of such seizure, under our statutes, is, to place the property sued for in the custody of the law, and thus to secure to the plaintiff the fruits of his judgment, if he recovers. To obtain such order of seizure, the plaintiff must make oath to his ownership of the property, and give bond, conditioned, if he fail in the suit, to pay the defendant all such costs and damages as he may sustain from the wrongful suing out of the writ, or 'wrongful complaint,' as the statute now stands.—Clay's Dig. 317, § 31 ; Code of 1876, § 2942. There was verdict and judgment for the defendant in that case ; and on writ of error to this court, the judgment of the Circuit Court was affirmed. Baber then sued on the detinue bond, to recover the costs and damages he had sustained. The question was made, whether the bondsmen were liable for defendant's attorney's fees in this court. It was ruled, by a majority of the court, that they were not, GOLDTHWAITE, J. dissenting.

*Bullock v. Ferguson*, 30 Ala. 227, was a suit on an injunction bond. The injunction had been dissolved by the chancellor, and, on appeal by the complainant to this court, the decree of the chancellor was affirmed. There was then suit

[Bolling v. Tate.]

on the injunction bond, and the question was again made, whether the bondsmen were liable for the defendant's counsel fees in this court. The majority of the court, following *Ferguson v. Baber*, held they were not. The report of the case shows that the writer of this opinion preferred to remain uncommitted on that question. The case of *Holmes v. Weaver* was a suit on an injunction bond, but presented no question of attorney's fees in this court. It re-affirmed the doctrine, asserted in the older cases, that in such action, reasonable counsel fees, incurred in the court below, may be recovered as damages.—52 Ala. 516; *Garrett v. Logan*, 19 Ala. 344; *Miller v. Garrett*, 35 Ala. 96; *Seay v. Greenwood*, 21 Ala. 491; *Pounds v. Hamner*, 57 Ala. 342.

In the case of *Ferguson v. Baber*, 24 Ala. 402, it was said : " The bond before us [detinue bond] contemplates the payment of such damages as may have been occasioned by the wrongful suing out of the writ, if the plaintiffs should fail in the suit." The main reason given in that case, for disallowing attorney's fees in this court, as damages sustained from the wrongful suing out of the writ, was, that the writ of error, or appeal to this court, is in the nature of a new suit— not the suit in which the bond is given. A writ of error, or appeal, is, in a limited sense, a new suit; but, in another sense, it is but a continuation of the proceeding. It is also inferable from the reasoning and rulings in our earlier cases, that our predecessors intended to limit the recovery of the counsel fees, to that portion of the defense which was caused or rendered necessary by the writ of seizure, levy of attachment, or the restraining order, as the case might be ; and that it does not extend to the defense of the entire action, thus commenced.

It is true that, for bringing an action in any of the ordinary forms, no matter how groundless the claim, no action for damages lies at the suit of the defendant, for costs and damages suffered by him in making his defense. When, however, the remedy resorted to is statutory, and beyond the line of ordinary legal proceedings, our statutes have, in many cases, thrown safe-guards around the rights of defendants. Suits are instituted by plaintiffs, on *ex-parte* statements, and assumptions of fact. If, on such *ex-parte* representation or claim, it is proposed to disturb possession of property, or to restrain action as a remedial precaution, our statutes have provided remedies to meet these ends, adapted to most of the emergencies that arise in human transactions. Property may be attached on various grounds : debts due to defendants may be reached and secured under process of garnishment, issued in aid of a pending suit for

money, at any time after the institution of such suit; in suits to recover chattels in specie, the property sued for may be seized and secured at the very inception of the litigation; and an injunction from the Chancery Court, restraining action, may be awarded on an *ex-parte* application, without notice to the defendant, and hence before he has had an opportunity to be heard in his own defense. But, before these processes will be granted, the party invoking them must present a state of averred facts, verified by his oath, and execute a bond to indemnify the defendant against costs and damages. The condition of the bond is not the same in all cases, but is varied so as to prevent the abuse, and compensate the wrong, which the legislature feared might be perpetrated in the several classes of cases. The bond in detinue protects the defendant, and compensates him in damages, only in the event the plaintiff fails in the action. No matter how causeless the seizure—how safe the right of the plaintiff would have remained without it— this furnishes no cause of action, if the property is found to be the plaintiff's.

The bond in attachment, and in garnishment, which is only 'a species of attachment, is intended to protect defendants against an unnecessary resort to this extraordinary remedy. If there is no ground for such process, damages may be recovered, although the debt claimed is actually due, and is recovered. Injunctions restrain action, and the maintenance or breach of the bond depends on the success or failure of the suit or litigation, in aid of which it is obtained. If the injunction is made perpetual, the defendant has sustained no legal damage. If it is dissolved, there is a breach of the bond, and an action lies.

Now, it is manifest that no uniform, unbinding measure of damages can be declared, which will fit every phase of each variety of bond, which may be the subject of a suit for damages. Each must depend, in large degree, on the terms and purpose of the bond sued on. The legislature provided these several extraordinary, precautionary remedies, and they prescribed to suitors invoking them, that they should, by bond, secure defendants against their abuse. Their purpose extended no farther. They said; to suitors, "You may employ the forms prescribed in the general law; may prosecute any civil claim you may choose to assert; and no matter how groundless your claim, the defendant can maintain no valid claim for damages against you. If, however, you resort to these statutory, extraordinary remedies requiring bond, then, you render yourself liable for the damage the defendant sustains by such wrongful suit. Invoking the helps the

statute offers you, you proceed at your peril; and both you and your sureties must respond in damages, for every injury you do the defendant, within the condition and scope of your bond." Rulings on the various classes of bonds we have been discussing will be found in the authorities cited above, and in 1 Brick. Dig. 171, §§ 263 *et seq*; *Drake v. Webb*, 63 Ala. 596; *Pounds v. Hamner*, 57 Ala. 342; *Barber v. Ferrill, Ib.* 446.

As we have shown above, the scope of the different classes of bonds is not uniformly the same. The scope and extent of the liability of the bondsmen, on the various classes of bonds mentioned, is the damage, natural and proximate, caused by the litigation inaugurated by the giving of the bond. We think our predecessors fell into an error, in the cases of *Ferguson v. Baber*, and *Bullock v. Ferguson*, when they held the bondsmen not liable for attorney's fees in this court. In each of the cases, the defendant needed the services of counsel in this court; and that need or want was caused by the writ sued out, and wrongfully sued out against him. The institution of the suit in the court below, and judgment thereon, gave the plaintiff the right to bring the case to this court, by writ of error, or appeal; he did so bring his case to this court, and obtained its judgment thereon; and he thus forced on the defendant the expense of defending in this court, to the same extent, and as directly, as he had put that burden on him in the court below. Suppose, in either of those cases, the plaintiff had erroneously recovered in the court below, and the defendant had been forced to appeal, and did appeal to this court, and thereby obtained relief from the erroneous judgment against him; would not the expense of prosecuting the writ of error or appeal have been damages, caused by the wrongful suing out of the writ? Suppose, again, the defendant had erroneously succeeded in the court below, and thus acquired a right to sue on the bond; and the plaintiff had brought the case to this court, obtained a reversal, and established the right he had asserted by his suit; could the defendant maintain a suit on the bond, and recover for the breach the judgment of the court below had established? Or, would not the judgment of this court be a full answer to his action? We think our predecessors erred in confining the liability of the bondsmen to the damage suffered in the court below.

The peculiar features of this case have caused us to extend these remarks farther than we otherwise would have done. By the letter of the bond given, the bondsmen bound themselves to pay damages, if the injunction was dissolved by the Chancery Court; and the argument is, that the bond is not broken, because the Chancery Court of Butler did not

dissolve the injunction. If we were to follow the seeming lead of the cases of *Ferguson v. Baber*, and *Bullock v. Ferguson*, we would be driven to the following strange, if not anomalous results : *First*, that for obtaining the dissolution of an injunction wrongfully sued out, full compensation for attorney's fees can not be recovered, unless the dissolution is obtained in the court below, without appeal to this court; *second*, that when the Chancery Court refuses to dissolve, and this court, on appeal, reverses its decree, and dissolves the injunction, damages can be recovered for services of counsel in the unsuccessful attempt to obtain dissolution in the court below, but can not be recovered for such services, though successful, rendered in this court, without which the injunction would not have been dissolved. With all proper respect for our predecessors, it would seem that all necessary and proper expenses incurred to procure the dissolution, or to prevent its re-instatment, in the court below, or in this court, are the natural and proximate result of the wrongful suing out of the injunction, and are recoverable as·damages. The error, if not absurdity of the opposite ruling, is shown, we think, by the rulings which the special judge felt himself bound by precedent to make in this case. He allowed a recovery for attorney's services rendered in the Chancery Court, where the injunction was not dissolved, and disallowed the claim for similar services rendered in this court, where the injunction was dissolved. If we were to affirm his ruling in this regard, we would place ourselves in this further anomalous position. The obligation of the bond, as we have seen, is to pay damages, in the event the injunction is dissolved by the Chancery Court. We would be holding, that this language is broad enough to embrace a dissolution by this, the Supreme Court, and yet not broad enough to provide for the professional services necessary to procure that dissolution.

In *Edwards v. Bodine*, 11 Paige, 223, Ch. WALWORTH, speaking on this subject, said : " The necessity of paying such counsel fees is an actual damage, which the defendants have sustained by reason of the injunction. . . It is not a mere matter of discretion, as the condition of the bond is imperative, that the obligors in the bonds shall pay, to the parties enjoined, such damages as they may sustain by reason of the injunction. Under a covenant of warranty in a conveyance, also, the grantee, who has been evicted, is allowed to recover against his grantor the necessary counsel fees which he has been compelled to pay in defending his title, as a part of the damages which the grantee has sustained by the breach of the covenant of warranty. And I

can not discover any distinction, in principle, between
that case and the one now under consideration. For, if the
extra counsel fees, which the grantee had necessarily been
compelled to pay in that case, in an unavailing attempt to
defend his title, were a part of the damages occasioned by
the breach of warranty, similar counsel fees, which these
appellants were obliged to pay, in this case, to obtain a
dissolution of the injunction, were a part of the damages
which they sustained by reason of that injunction."

In *Hayden v. Sample*, 10 Mo. 215, suit was brought on an
attachment bond, conditioned to pay all damages that should
accrue to the defendant, or any garnishee, *in consequence of
the attachment.* Attorney's fees in defending and defeating
the attachment suit were claimed as damages. The attach-
ment suit had gone off, on a plea in abatement. Plaintiff
recovered in the court below, on his claim for counsel fees ;
and it was contended in the Supreme Court, that the condi-
tion of the bond did not extend to, or embrace, the costs
which accrued on the trial of the issue formed on the plea
in abatement. The court said :   "We are of opinion that
these costs may very properly be considered as costs accru-
ing to the defendant, ' in consequence of the attachment.'
All the costs of the subsequent proceedings, authorized by
the act, may be regarded as a consequence of the attach-
ment." The judgment of the court below was affirmed. An
examination of the report of that case will show, that the
court included under the general term *costs* the fees paid to
counsel in maintaining the plea in abatement.

In the case of *Andrews v. Glenville Woollen Co.*, 50 N. Y.
282, motion to dissolve an injunction was made, and the
motion refused, the court deeming it more advisable to defer
the inquiry into the merits until the final hearing. On final
hearing, the motion was granted, and the injunction dis-
solved. The question was, whether the services of counsel
in making the motion to dissolve could be recovered as
damages in a suit on the bond. The court said :  "It was
proper that the defendant should move, at the earliest
opportunity, to dissolve the injunction. His motion did not
fail through any fault on his part, or any defects in the
merits of his case. The court simply deferred its decision
upon the merits, until the trial. The result which must, for
the purposes of this application, be assumed to be correct,
shows that, if the decision had not thus been deferred, the
motion should have been granted when made. Under these
circumstances, I think the expenses of the motion were
reasonably and properly incurred, as a direct consequence of
the injunction, and were properly allowed by the referee."

[Bolling v. Tate.]

See, also, *Corcoran v. Judson*, 24 N. Y. 106 ; *Brown v. Jones*, 5 Nev. 374 ; *Trapnall v. McAfee*, 3 Metc. Ky. 34 ; *Bank v. Heath*, 45 N. H. 524 ; *Fitzpatrick v. Flagg*, 12 Abb. Pr. 189 ; *Littlejohn v. Wilcox*, 11 La. Ann. 620 ; *McRae v. Brown*, 12 La. Ann. 181 ; *Transit Co. v. McRae*, 13 La. Ann. 214 ; *Phelps v. Coggeshall, Ib.* 440 ; *Murray v. Munford*, 2 Cow. 400 ; *Boyd v. Brisban*, 11 Wend. 229.

The fees recoverable, however, are not necessarily for the defense of the whole action. They are limited to that part of the defense, or the whole, as the case may be, that may be rendered necessary by the writ of seizure, or injunction complained of.—*Andrews v. Glenville Woollen Co.*, 50 N. Y. 282 ; *Derry Bank v. Heath*, 45 N. H. 524; *Trapnall v. McAfee*, 3 Metc. Ky. 34; *Pettit v. Owen*, 8 B. Mon. 51 ; *Burgen v. Shaver*, 14 B. Mon. 500 ; *Transit Co. McRae*, 13 La. Ann. 214; *Phelps v. Coggeshall, Ib.* 440; *Brown v. Jones*, 5 Nev. 374 ; Sedg. Dam. 397, marg., and note.

We have felt called upon to consider the question noticed first above, before passing on the demurrer, because the principles we have been discussing enter into a proper construction of the bond sued on. We hold the construction contended for is too narrow and technical. The power of this court to dissolve injunctions on appeal, is co-extensive with the power of the Chancery Court. The spirit and purpose of the bond were, to pay damages if the injunction was dissolved. An appeal has always lain to this court, from final decrees of the Chancery Court ; and in that way, this court has always had and exercised jurisdiction to dissolve injunctions in dernier resort. When the present bond was executed (March 20th, 1876), the statute allowed an appeal from interlocutory decrees of the chancellor, dissolving or refusing to dissolve injunctions.—Pamph. Acts 1874-5, p. 265 ; Code of 1876, § 3922. The parties, in executing the present bond, must be presumed to have contracted in reference to the existing statutes, and to have contemplated a dissolution by any court to which the cause could be legally carried.

*Reusch v. Demass*, 34 Mich. 95, was a suit on a replevin bond. The maker of the bond had instituted a suit in the Circuit Court, and had given bond, conditioned that if the defendant recover judgment against him, he will return the property, if return be adjudged, and pay such sums as defendant may recover against him. Under a statute of Michigan, defendant had removed the cause to the Superior Court of Detroit, and defendant there had judgment. It was contended in defense, that the bondsmen were not liable, because defendant's recovery was not in the court in

which the bond was given, and to which it was returnable. The court said : " As this bond was given after the law came in force which authorized such suits to be transferred, it must be construed to apply to the proceedings in whatever court they may be. A suit in the Circuit, might become a suit in the Superior Court, at the option of the defendant; and the transfer was as fairly contemplated as any other step in the cause,—as a trial by the court or by jury, or a judgment by default, or a continuance by consent. Every one must be subject to the incidents of the litigation, wherever they may be. The suit is the same suit in both courts, and the removal is not an extraordinary step, but one which the defendant was expressly empowered to take, if he saw fit." The defense was disallowed. In *Jordan v. Agawam Woollen Co.*, 106 Mass. 571, a defendant, in the Circuit Court of the United States, had given bond with surety, " to keep and perform the final decree in the cause, and pay all sums which might therein and thereby be decreed to be paid by him." The Circuit Court rendered a final decree against him, for damages and costs, from which he appealed to the Supreme Court of the United States, and gave a new bond, with different surety, to pay all such costs as that court should decree to be paid to plaintiff, upon affirmance of the decree of the Circuit Court. The Supreme Court of the United States affirmed the decree of the Circuit Court, with costs and interest ; and, as is its custom, sent its mandate down to the Circuit Court ; and, pursuant to the mandate, the Circuit Court decreed that its own former decree be affirmed, with costs and interest, thus adopting the decree of the Supreme Court. There was suit on the original bond, as a common-law obligation ; and the court held that the parties to it were liable for each and every item of the affirmed judgment.—See, also, *Seacord v. Morgan*, 3 Keyes, N. Y. 636.

It results from what we have said, that the Circuit Court did not err in overruling the first and second grounds of the demurrer to the complaint, and did err in sustaining the third ground. The court did not err in overruling the fourth ground of defendant's demurrer, which relates to the depreciation in value of the mortgaged property, pending the injunction.—*Drake v. Webb*, 63 Ala. 596; *Ripley v. Mosely*, 57 Maine, 76.

The Circuit Court rightly disallowed plaintiff's claim for expenses, in coming from Pensacola to Greenville. This was but the accident of the case, and too remote to be the subject of a recovery. The bond sued on showed, on its face, that it was given in a suit in which Evans alone was

[McDuffie v. Cook.]

complainant. This proved that Bolling and Caldwell were only sureties. It is difficult to perceive that any injury was done to the plaintiff by further proof of a fact already in evidence; but that fact should have exerted no influence in the assessment of damages. In suits on bonds, the liability of the sureties is the same as that of the principal.

What we have said will be a sufficient guide on another trial. On the assigments by Bolling and Caldwell, we find no error in the record. On the assigments by Tate, the judgment is reversed, and the cause remanded.