# Pollock & Co. v. Gantt.

## *Action on Attachment Bond.*

    1.  *General rules for recovery of damages.*—Among the general rules for
the recovery of damages are the following: (1). They must be the natu-
ral and proximate consequence of the wrong done, not the remote or ac-
cidental result; (2) special damages can be recovered only when they
are not too remote, and are specially declared on and claimed in the com-
plaint; and (3) what are termed speculative damages—that is, possible
or even probable profits that, it is claimed, could have been realized, but
for the tortious act or breach of contract charged against the defendant—
are too remote and can not be recovered.

    2.  *Credit as a collective fact to which witness may testify.*—Good or bad
credit is a conclusion of fact, partly based upon opinion, founded more or
less on reputation; and to credit, as a fact, any witness shown to pos-
sess sufficient knowledge of the subject, may testify; but such witness
can not speak of its value in dollars and cents, that being a matter of in-
ference for the jury to determine.

    3.  *Extent of a merchant's business; when a fact to which a witness may
testify.*—A witness may testify to the extent of a merchant's business,
and the rate or average of profits he may realize on sales, above expenses,
if within his knowledge; but he can not give his judgment or opinion as
to the extent of loss a merchant will suffer by the breaking up of his
business. Such question is dependent on so many elements of fact and
circumstance, that any estimate that might be attempted, would neces-
sarily be opinion or conclusion.

    4.  *Action on attachment bond; what damages too remote.*—In an action
on an attachment bond, in which the only averment of special damage
is, that "the plaintiff was engaged in the mercantile business, and had
a good reputation, credit, business and good customers; and that by, and
in consequence of the levy of said attachment on his property and effects,
his business, reputation and credit have been destroyed and lost, and his
customers have withdrawn, to the loss and special damage of the plain-
tiff," etc., it is not competent for the plaintiff to show, that at the time of,
and prior to the levy he was making advances to timber-men and others,

| 69 | 373 |
| 93 | 461 |

| 69 | 373 |
| 95 | 605 |

| 69 | 373 |
| 96 | 230 |
| 97 | 637 |
| 97 | 667 |

| 69 | 373 |
| 98 | 324 |
| 98 | 345 |

| 69 | 373 |
| 99 | 23 |
| 99 | 340 |
| 69 | 373 |
| 109 | 583 |

| 69 | 373 |
| 113 | 479 |

| 69 | 373 |
| 142 | 570 |

| 69 | 373 |
| 143 | 418 |
| 143 | 420 |
| 143 | 619 |

[Pollock & Co. v. Gantt.]

and that thereby he had become interested in the handling of timber and crops, and that his mercantile business being. stopped, he lost these advantages, and lost his advances and the shipment of his timber. Such matters are inadmissible, because there is no averment in the complaint authorizing them, and on the further ground, that if there had been such an averment, the damages claimed on account thereof, are speculative and too remote.

5. *Attachment sued out by agent ; for what damages the principal liable.* Where an attachment was sued out by an agent, and it is neither shown that he was thereunto authorized or instructed, nor that the principal ever repudiated the suit, this subjected the principal to actual damages, if no cause existed for suing out the process; but he is not responsible for the malice, vexatious conduct, or wantonness of the agent, unless he caused, or participated in such evil motive or conduct.

6. *When prior attachments admissible on trial of action on attachment bond.*—It is competent for a defendant to prove, for the purpose of affecting the recovery of exemplary or vindictive damages, that prior to the issuance of his attachment, his agent by whom it was sued out, had notice that other creditors of the plaintiff had, on that day, obtained attachments against him on the same ground as that alleged in defendant's attachment. But such testimony can not affect the actual damages which the plaintiff is entitled to recover.

7. *Attachment ; when wrongfully sued out.*—No matter how well founded the belief of the attaching creditor, that a statutory ground exists for sueing out the attachment, if he be mistaken or misinformed, and no ground in fact exists therefor, then the attachment is wrongful, and there may be a recovery of the actual damages sustained, which is measured by the actual injury which the issue and levy of the attachment occasioned.

APPEAL from Conecuh Circuit Court.

Tried before Hon. JOHN P. HUBBARD.

This was an action by M. A. Gantt, the appellee, against J. Pollock and others, the appellants; was commenced on 18th July, 1881, and was founded on a bond executed by the appellants to procure an attachment in favor of Pollock & Co. against the appellee. The attachment was sued out by one Weil as the agent of Pollock & Co. on the 13th April, 1881, and was levied on the next day thereafter by the sheriff of Conecuh county, on a stock of goods, wares and merchandise belonging to the appellee. On the trial the plaintiff in the court below read to the jury the papers relating to the attachment suit, and was then examined as a witness on his own behalf, and he testified, in substance, among other things, as follows : That at the time of the issuance and levy of the attachment, he was in the timber business, and was furnishing advances to farmers under crop liens and mortgages, and to "timber-getters" under contracts, such advances to be made along during the year 1881, his trade being about $15,000.00 a year, and that by reason of the attachment he failed to meet his contracts for advances, and thereby he sustained loss ; and that at that time he was doing a general mercantile business in the town of Evergreen. He was then asked by his counsel this question : "How much

[Pollock & Co. v. Gantt.]

business would you have done on the contracts in the year with the customers to whom you had begun to advance, if you had gone on," to which he answered, "some ten or fifteen thousand dollars." The plaintiff having further testified, that his credit was, prior to the issue of the attachment, good for $10,000.00 or $15,000.00, was asked by his counsel this question: "What sort of credit did you have when the attachment was sued out," to which the plaintiff answered, "I had a good credit and could buy all the goods I wanted." He was then asked by his counsel this question: "Since the levy of the attachment, what is your credit worth," to which he replied, "I have had no credit since that time. My credit was ruined." He was then asked by his counsel this question: "What effect did the levy of the attachment have as to the contracts existing with you and your customers, as to your being able to collect or not collect them," to which he replied, "it had a bad effect, it forced my customers to other places to trade, and they paid their accounts there first." He was then asked this question by his counsel: "Have you been unable to comply with your contracts so that your customers would not comply with theirs," to which he replied, "I have been unable to carry out my contracts, and in many cases my customers would not pay me for that reason." He was then asked this question by his counsel: "What effect did it have on your timber business," to which he answered, "it had a pretty bad effect, stopped the business, was not able to carry the contracts through, and some timber that I got out could not be gotten off and is rotting in the woods." He was then asked by his counsel this question: "How much was the timber lying in the woods which you failed to get off, worth," to which he answered, "about one thousand dollars." To each of these questions and to the answers thereto, the defendants duly and separately objected, and their several objections having been overruled by the court, they separately excepted.

The defendants, among other things, showed, that prior to the issuance of the attachment by Pollock & Co., other attachments had been sued out against the plaintiff by other of his creditors, on the same ground, and levied on his stock of goods, wares and merchandise; and they thereupon offered to prove, that the agent of Pollock & Co., who sued out their attachment, before doing so, had notice that the other attachments had been issued and levied; but the court, on objection by plaintiff, refused to allow the defendants to make the offered proof, and they excepted. Numerous other exceptions were taken by defendants to the rulings of the Circuit Court on the trial, but it is not necessary to set them out. The other material facts are stated in the opinion. The jury brought in a verdict for the plaintiff, assessing his actual damages at $300.00 and his vin-

dictive damages at $1,000.00, on which a judgment was rendered against the defendants. The rulings of the Circuit Court above noted are among the errors assigned by the appellants.

FARNHAM & RABB, for appellants.—(1). The defendant in attachment, in an action on the attachment bond, is not entitled to recover damages which are not the natural, proximate, legal result or consequence of the wrongful act. Remote and speculative damages are not recoverable.—Drake on Att. §§ 175–8, and cases cited; *Donnell v. Jones*, 13 Ala. 490, and cases cited. (2). In such action proof of speculative damages arising from loss of reputation, credit or business, or the withdrawal of particular customers can not be made, unless such special damages are averred in the complaint.—*Donnell v. Jones, supra; Lewis v. Paull*, 42 Ala. 136; *Dothard v. Sheid, ante*, p. 135. (3). "The general rule requires, that witnesses should depose only to facts, and such facts too, as come within their knowledge. The expression of opinions, the belief of the witness or deductions from the facts, are not proper evidence as coming from the witness, and when such deductions are made by the witness, the province of the jury is invaded." *Brice & Co. v. Lide*, 30 Ala. 647, and cases cited. (4). To repel the imputation of malice, the fact that other attachments, of which the plaintiff therein had notice, had been issued, is competent evidence.—*Cuthbert v. Newell*, 7 Ala. 457; *Yarborough v. Hudson*, 19 Ala. 653; *Goldsmith, Forcheimer & Co. v. Picard*, 27 Ala. 142; *Lockhart v. Woods*, 38 Ala. 631. (5). In this action malice of an agent can not be imputed to the principal; and where, as in this case, the attachment was sued out by an agent, no vindictive damages can be recovered.—*Kirksey v. Jones*, 7 Ala. 622; *McCullough v. Walton*, 11 Ala. 492.

STALLWORTH & BURNETT, *contra*. (No brief came to the hands of the reporter.)

STONE, J.—The present is a suit by a merchant, and complains that Pollock & Co. wrongfully and vexatiously sued out an attachment against him, and procured it to be levied on his stock of merchandise. The suit is on the bond given to procure the attachment. The special ground of the attachment was, "that the said M. A. Gantt has moneys, property or effects liable to satisfy his debts, which he fraudulently withholds." Two other attachments had been previously, but on the same day, sued out against Gantt by other creditors, and had been levied on the same stock of merchandise. The ground on which those other attachments were issued, was the same as that on which the present one was sued out; and the

recoveries in those prior suits greatly exceeded the sum the merchandise yielded, after setting apart to the defendant one thousand dollars in value of the goods, claimed and allowed to him as exempt. The attachment in favor of Pollock & Co. was sued out by an agent, and the record is silent as to the authority under which the agent acted. The complaint sets forth a copy of the bond, avers that the alleged ground on which the attachment was issued is untrue, and avers separately, first, that it was wrongfully sued out, and, second, that it was wrongfully and vexatiously sued out. It contains also an averment of special damage, "that at the time of suing out and levy of said attachment · on the goods, wares, chattels and merchandise of the plaintiff, by the defendants, J. Pollock & Co., he, the plaintiff, was engaged in the mercantile business, and had a good reputation, credit, business and good customers; and that by, and in consequence of the levy of said attachment on his property and effects, his business, reputation and credit have been destroyed and lost, and his customers have withdrawn—to the loss and special damage of the plaintiff," etc. It will be observed that the special damage herein averred, relates to his reputation and credit as a merchant, and the value and profitableness of his business as a merchant.

Among the general rules for the recovery of damages, are the following: that they must be the natural and proximate consequence of the wrong done ; not the remote, or accidental result. And special damages can be recovered only when they are not too remote, and are specially counted on and claimed in the complaint. What are termed speculative damages—that is, possible or even probable profits that, it is claimed, could have been realized but for the tortious act or breach of contract charged against defendant—are too remote and can not be recovered.—*Culver v. Hill*, 68 Ala. 66 ; *Donnell v. Jones*, 13 Ala. 490 ; *O'Grady v. Julian*, 34 Ala. 88 ; *Bolling v. Tate*, 65 Ala. 417 ; *Sims v. Glazener*, 14 Ala. 695 ; *Burton v. Holley*, 29 Ala. 318 ; *Higgins v. Mansfield*, 62 Ala. 267.

The ground on which special damages are claimed in this case, may be summarized as follows : That plaintiff was a merchant of good reputation and credit, had good customers and was doing a good business, and that by the issue and levy of the attachment, his credit was destroyed, and his business broken up. The issue formed on these averments opened the door for proof and disproof of every material fact embraced within the issue thus formed. It opened the door no wider. It did not let in evidence of any special damage, of which the averments in the complaint give no notice. This, for the obvious reason, that any other rule would operate a surprise and injustice to the defendants. Hence the rule requiring special averments, to

authorize a recovery of special damages. And if the damages claimed be of the class called speculative, or otherwise too remote, even special averments will not authorize their recovery.

The general rule is that only facts can be given in evidence. Facts are sometimes simple, sometimes collective. Still, the witnesses speak only of facts. It is for the jury to draw inferences and conclusions. There are exceptions to this rule. Experts can testify to opinions; and there are many questions upon which a non-expert witness may express his judgment or opinion. Value, length of time, distance, and many others, fall under this class. So, good or bad character, good or bad credit, is a conclusion of fact, partly based on opinion and judgment, founded more or less on reputation; and, the proper predicate being laid, any one may testify to it as a fact; a collective fact, made up of many known ingredients. The proper predicate to be laid is, that the witness has sufficient knowledge of the subject—character or credit—about which he proposes to testify. So, if a witness has sufficient knowledge, he can speak of credit as a fact, and the extent of it. He can not speak of its value in dollars and cents. That is a question of inference for the jury to draw. And a witness may testify to the extent of a merchant's business, and the rate, or average of profits he may realize on sales, above expenses, if these are matters within his knowledge; but he can not give his judgment or opinion as to the extent of loss a merchant will suffer by the breaking up of his business. Such question is dependent on so many elements of fact and circumstance, that any estimate that might be attempted, would necessarily be opinion, or conclusion. This is a question for the jury, not for direct testimony.

Proof was offered by plaintiff, and received by the court against the objection of defendants, that plaintiff was making advances to timbermen and others, and that thereby he had become interested in the handling of timber and crops; and his mercantile business being stopped, he lost these advantages, lost his advances, and lost the shipment of his timber. These matters of proof, each and all, were inadmissible. There was no averment in the complaint to authorize them, and if there had been, the damages claimed on those accounts are speculative and too remote.

In this case the attachment was sued out by an agent, and there is no proof that the agent was authorized or instructed to sue out the process. Neither is there proof that the principal ever repudiated the suit. It was prosecuted to judgment. This subjected the principal to actual damages, if no cause existed for suing it out. He would not be responsible for the malice, vexatious conduct, or wantonness of the agent, unless

[Burks v. Hubbard.]

he caused, or participated in such evil motive.  Malice or vexatiousness in the agent, and only in him, does not expose the principal to vindictive damages.—*Kirksey v. Jones*, 7 Ala. 622 ;. *McCullough v. Walton*, 11 Ala. 492.  The defendants ought to have been permitted to prove, that previous to the suing out of their attachment, the agent by whom it was done, was notified that other creditors of the plaintiff had on that day sued out attachments against him, on the same alleged ground as that set forth in defendant's attachment.  This testimony was admissible on the question of exemplary or vindictive damages. It does not bear on the question of actual damages.  No matter how well founded the belief of the attaching creditor, that. a statutory ground exists for suing out the attachment, if he mistake, or be misinformed, and there be in fact no ground for this extraordinary process, then the attachment is wrongful,. and there may be a recovery of the actual damage done.  This is measured .by the actual injury which the issue and levy of the particular attachment occasioned.  It extends no farther.

Several of the rulings of the Circuit Court are not reconcilable with the views expressed above.

Reversed and remanded.