[Jackson v. Smith.]

# Jackson v. Smith.

*Action on Attachment Bond.*

1. *Attachment bond; vexation alone no ground of recovery.*—Vexation without wrong gives no right of action; and hence, in a suit on an attachment bond, no recovery can be had unless the attachment was wrongful.

2. *Same; liability on, when attachment wrongful.*—If, when an attachment is sued out, no statutory ground for it exists, it is wrongful, no matter how honestly or sincerely the plaintiff may have acted in suing it out; and for such wrongful act, although done by an agent without express direction, the principal and sureties on the attachment bond are liable.

3. *Same; damages as affected by probable cause; when malice inferred.* When an attachment is sued out by one having probable cause for believing the facts exist which, if true, would authorize an attachment, only actual damages can be recovered, although in fact no ground existed; but if, in such case, there is no sufficient evidence of probable cause, the jury may infer malice or vexation from the absence of such proof, and vindictive or exemplary damages may be recovered.

4. *Same; exemplary damages not recoverable on unauthorized malice of agent.*—A principal is not responsible for the malice, vexation or wantonness of his agent in suing out an attachment, unless he authorized or participated in it; and such authority or participation, to render the principal liable, must be proved; it can not be inferred from the mere relation of principal and agent.

5. *Same; when evidence of agent's malice inadmissible.*—In a suit on an attachment bond, whether against the principal or·surety, the unauthorized malice or vexation of the agent·not being a ground of recovery, evidence of it should not be allowed to go to the jury.

6. *Same; measure of actual damages.*—Damages, to be recoverable in an action on an attachment bond, must be the natural and proximate result of the wrongful, or wrongful and vexatious suing out of the attachment; they must not be the accidental, contingent, or speculative consequence resulting therefrom.

7. *Same; what evidence inadmissible.*—In an action on an attachment bond, it is not competent for the plaintiff to testify that the effect of the attachment on him was to prevent him from making a crop, and from doing any business, and that it ruined him; or to prove that he was a man of limited means.

8. *Same.*—It was further held that the primary court erred in allowing proof to be made in this case by the plaintiff, (1) when and how he obtained money which he placed on deposit with his surety on a replevy bond executed by him in the attachment suit, the fact of such deposit not having been proved against him; (2) how he had lived after the attachment was levied, it not being in rebuttal to any thing proved against him; and (3) that the plaintiff said to witnesses that he was not going to Texas, when it is not shown to have been a part of the *res gestæ.*

APPEAL from Macon Circuit Court.

[Jackson v. Smith.]

Tried before R. F. Ligon, Esquire, acting as Special Judge.

This was an action by F. A. Smith against W. S. Jackson and J. C. Smith, the nature of which is stated in the opinion. The cause was tried on the plea of the general issue, the trial resulting in a verdict and judgment for the plaintiff. On the trial, as shown by the bill of exceptions, the plaintiff read in evidence the bond sued on, and the writ issued in pursuance thereof, dated 5th January, 1882, but not the affidavit on which it was issued; nor is it disclosed by the record on what ground the attachment was sued out, or upon what property it was levied. The plaintiff was allowed, against the defendants' objection and exception, to read in evidence an attachment that was issued in favor of Wilcox, Gibbs & Co. on 2nd January, 1882, " which is in form and substance the same as the attachment above set out, except in date, and issued out of the same court, and by the same officer, and for the same debt." The plaintiff also showed that the last named attachment was dismissed, after notice to plaintiff's attorneys, on 3rd January, 1882; and, as the defendants' evidence tended to show, it was dismissed on account of a defect in the proceedings. The plaintiff, having introduced evidence tending to show that, at the time the attachment dated 5th January, 1882, was issued, he was not about to remove out of the State, was examined as a witness on his own behalf. Having been examined on cross-examination " as to whether his credit was not based upon his property rather than upon personal credit," in rebuttal he was asked by his counsel, " What effect did the issuance of the attachment have on you;" and to this question he replied, "It prevented me from making any crop and doing any business." To this question and answer the defendants separately objected; and, their objections having been overruled, they duly excepted. The plaintiff was also asked by counsel the following questions, and made answers thereto as follows: Ques. What effect did the issue of said attachment have? Ans. It ruined me. Ques. Were you enabled to get credit upon the faith of the property you then had? Ans. I was. Ques. Was farming profitable or not in 1881? Ans. It was not. Ques. Where did you get the money from that you deposited with Mr. Williams, the surety on your replevy bond in the attachment? Ans. I sold the property attached and turned over the proceeds of sale to him. To each of said questions and answers the defendants separately objected; but their objections were overruled, and they duly excepted. Evidence having been introduced tending to show that the plaintiff was living on a farm some miles from Tuskegee at the time the first attachment was issued, and that not long afterwards he moved to Tuskegee, the plaintiff was asked how he had lived

[Jackson v. Smith.]

since he moved to town, to which he replied that he had lived. with certain named kinsmen. To the question and answer the defendants separately objected; but their objections were overruled, and they duly excepted. By another witness the plaintiff was allowed to prove, against defendants' objection, that he, plaintiff, was a man of limited means; and to this ruling the defendants excepted. By one Willis the plaintiff was allowed to show, against the defendants' objection, that the plaintiff said to him that "he was not going to Texas; that he intended to move to town;" and by one Mary Seals he was allowed to show, against defendants' objection, that the plaintiff said to her that "he was not going to Texas." To each of these rulings the defendants excepted. The bill of exceptions does not disclose the time, connection or circumstances of these declarations. The plaintiff also introduced evidence tending to show that an agent of the plaintiff went to the defendant Jackson, after the first attachment, and before the second was issued, and said to him "that if the plaintiff ever had any intention of going to Texas, he had none then, and for God's sake not to have another attachment issued against him;" also evidence tending to show that "he had been damaged in the sum of $17.50, in having to employ counsel to defend said attachment suit, in the sum of $8.00, costs of that suit, and $24.60, expenses for keeping the property after it was attached."

The defendants' evidence tended to show that, at the time the attachment was issued, the plaintiff was about to remove from the State, and, about that time, both prior and subsequent thereto, he was disposing of his real and personal property; that the plaintiffs in attachment, Wilcox, Gibbs & Co., were residents of Georgia, and were not in this State at the time said writ was sued out; that defendant Jackson, as their agent, had the claim on which the attachment suit was founded, for collection; that "he, of his own accord, had the said attachment issued, with no other motive than that of collecting said claim;" and that he then had reasonable cause to believe that the plaintiff was about to remove out of the State, and that he acted under the advice of his attorneys in having the the attachment issued. The defendants also proved the existence and amount of the debt on which the attachment was issued.

The foregoing is the substance of the evidence contained in the bill of exceptions, which does not purport to set it all out. The court charged the jury, at the plaintiff's request, *inter alia*, as follows (3) "In fixing actual damages, the jury may look to the proof of the several items of expenses, time of plaintiff, keeping stock, attorney's fees, and court costs." (4) "If the jury find that the attachment was maliciously

[Jackson v. Smith.]

sued out, in fixing vindictive damages, the jury may consider the testimony showing that the plaintiff was greatly vexed by the suits, broken up in business, and his credit ruined." (5) "An agent is presumed to act according to the instructions of his principal, that is to say, that Jackson was acting under instructions of Wilcox, Gibbs & Co.; and it is upon them to show that he transcended his instructions in order to remove such presumption." (8) "No matter on what evidence Jackson acted, no matter what probable cause he had, no matter how honestly he acted, yet, if the jury are satisfied that, at the time the writ was sued out, on 5th January, 1882, plaintiff was not about to remove out of the State, the attachment was wrongfully sued out." (10) "If the jury believe that, at the time of the suing out of the writ of attachment, on 5th of January, 1882, the plaintiff was not about to leave the State, then the attachment was wrongfully sued out, and the defendants are liable for the actual damages."

To each of these charges the defendants duly excepted; and also to the refusal of the court to give each of the following charges requested by them in writing: (1) "If the jury believe from the evidence, that Jackson was the agent of Wilcox, Gibbs & Co., in the collection of the debt against the plaintiff, and that said Jackson maliciously sued out the attachment in this cause, such malice affords no ground for a recovery of vindictive damages in this case, unless it is shown that Wilcox, Gibbs & Co. participated in the malice of said Jackson." (2) "That the malice of Jackson, if any, in suing out the attachment in this case, as the agent of Wilcox, Gibbs & Co., can not be considered by the jury in estimating vindictive damages." (3) "The malice of Jackson has nothing to do with the question of vindictive damages in this case, unless it is shown from the evidence, that the conduct of Jackson, from which malice, if any, may be inferred, was authorized by Wilcox, Gibbs & Co." (4) "That the liability of the defendant J. C. Smith on the bond sued on, to the plaintiff for vindictive or exemplary damages, can not arise, unless Wilcox, Gibbs & Co. acted maliciously in suing out said attachment." (5) "As the only evidence in this case, as to the issuance of this attachment, is, that it was sued out by W. S. Jackson, the defendant, as the agent of Wilcox, Gibbs & Co., and as there is no evidence that said Wilcox, Gibbs & Co. participated in, or authorized the issuance of said writ, the question of vindictive damages does not arise." (6) "Unless the jury believe from the evidence, that Wilcox, Gibbs & Co. sued out the attachment in this case maliciously, they will not consider the question of vindictive or exemplary damages." (7) "If the jury believe from the evidence, that Jackson, as

[Jackson v. Smith.]

the agent of Wilcox, Gibbs & Co., maliciously sued out the attachment in this case, then such malice can not be imputed to Wilcox, Gibbs & Co., but it devolves upon the plaintiff to show that they participated in it." (8) "That the malice, if any, of Jackson can not be imputed to J. C. Smith, his co-defendant." (9) "The malice of Jackson, if any, can not be imputed to Wilcox, Gibbs & Co." (10) "That the defendant J. C. Smith is not responsible on the bond in .this case for vindictive or exemplary damages, unless Wilcox, Gibbs & Co. sued out the attachment in this case wrongfully and vexatiously."

R. H. ABERCROMBIE and J. A. BILBRO, for appellants.

W. C. BREWER and W. C. McIVER, *contra.*

STONE, J.—Jackson, as the agent of Wilcox, Gibbs & Co., sued out an attachment against Smith, and himself with another became sureties on the attachment bond, with condition to "prosecute said attachment to effect, and pay the said defendant all such damages as he may sustain by the wrongful or vexatious suing out said attachment." The present suit was brought by Smith on the attachment bond, and alleges that that suit was both wrongful and vexatious. The plaintiff also claims special damages,first,for costs and attorney's fees incurred in defending said attachment suit ; second,in having his property seized and taken from his possession, and third, in the loss of his credit and good name, in consequence of the suing out of said attachment. The suit is against the sureties on the bond —the attaching creditors not sued.

Unless the attachment was wrongful, there should be no recovery ; for vexation without wrong gives no right of action. If no one of the statutory causes for attachment existed in fact, then the attachment was wrongful, no matter how honestly or sincerely the agent may have acted in suing it out. And for such wrongful act, although done by an agent without express direction, the principal and all the bondsmen are liable. And when attachment is sued out by one having probable cause for believing the facts exist, which, if true, would authorize attachment, then only actual damages can be recovered, although in fact no ground existed. So, if in addition to the absence of statutory ground for attachment, there be malice or vexation in suing out the writ, then damages may be recovered beyond the actual injury ; and if there be no sufficient evidence of such probable cause for belief, the jury may infer malice or vexation from the absence of such proof. And, no cause for attachment in fact existing, if this statutory and

somewhat extraordinary remedy be resorted to harshly, rashly, recklessly, or wantonly, the jury should consider this in determining whether there is malice or vexation. The principal, however, is not responsible for the malice, vexation, or wantonness of the agent in suing out the process, unless he authorized or participated in it; and such authority or participation, to render the principal liable, must be proved. It can not be inferred from the mere relation of principal and agent. And in a suit on the bond, whether against the principal or surety, the unauthorized malice or vexation of the agent can not be the ground of recovery, and should not be allowed to go to the jury. The relation of principal and agent in such service, when there is no evidence to connect the principal with the transaction, other than the fact that the process is sued out by agent, fastens a liability on the principal for actual damage, if the writ be wrongful. It goes no further.—1 Brick Dig. 171, §§ 263 *et seq.*; *Hamner v. Pounds*, 57 Ala. 348; *Durr v. Jackson*, 57 Ala. 203; *Bolling v. Tate*, 65 Ala. 417; *Lienkauf & Strauss v. Morris*, 66 Ala. 406; *Pollak v. Gantt*, 69 Ala. 373; *City National Bank v. Jeffries*, 73 Ala. 183; *Foster v. Napier*, 74 Ala. 393; *Kirksey v. Jones*, 7 Ala. 622; *Floyd v. Hamilton*, 33 Ala. 235.

Damages, to be recoverable, must be the natural and proximate result of the wrongful, or wrongful and vexatious suing out of the attachment. They must not be the accidental, contingent, or speculative consequence. These furnish too variable and uncertain a standard for the measurement of pecuniary liability. We have, in our various rulings, settled very many, if not all the questions this record presents. We will not recapitulate all we have said, but will refer to some of the cases in which we have expressed ourselves. In *Bolling v. Tate, supra*, we said: " The fees (attorneys') recoverable are not necessarily for the defense of the whole action. They are limited to that part of the defense, or the whole, as the case may be, that may be rendered necessary by the writ of seizure, or injunction complained of." See also *Hamner v. Pounds, supra.* So, in *Bolling v. Tate*, we said: " The circuit court rightly disallowed plaintiff's claim for expenses, in coming from Pensacola to Greenville. This was but the accident of the case, and too remote to be the subject of a recovery." The case of *Foster v. Napier*, 74 Ala. 393, was a suit on a detinue bond. The plaintiff, against the objection of defendant, was allowed to prove his loss of time and hotel bills paid, first, in procuring sureties on his replevin bond, and, second, in attending the trial of the case. We said: " In this the circuit court erred. Such damages are too remote and variable." Any damage actually sustained by the seizure and detention of the chattels, if

[Roberts v. Pippen.]

the attachment was wrongful, is a legitimate subject of recovery.—1 Sedg. on Dam. (7th Ed.) 218, note *a*; 2 Wait Ac. and Def. 463; Sutherland on Dam. 165-6; Field on Dam. 423.

The circuit court erred in the following particulars:

In receiving evidence of the prior attachment sued out.

In allowing the plaintiff to testify that the effect of the attachment on him was, to prevent him from making any crop, and from doing any business, and that it ruined him.

In permitting the plaintiff to state where and how he obtained the money which he placed on deposit with his surety on the replevin bond, unless the fact of such deposit had been first proved against him.

In permitting testimony as to how plaintiff had lived since his removal to town, unless this was in rebuttal to something proved against him.

In receiving proof that Smith was a man of limited means.

In permitting the witness Willis to testify to what plaintiff said to him about going to Texas. Such statement is sometimes allowed to be proved as *res gestæ*, but it is only as explanatory of some act done, or enterprise entered upon.—1 Brick. Dig. 843-4, 5, 6, §§ 556, 576, 590, 591, 593. We find no evidence in this record to authorize the proof of this declaration by plaintiff. The same rule applies to testimony given by Mary Seals.

Charge number three, given at plaintiff's instance, is faulty, in that it permitted plaintiff to recover for time lost in attending to the suit. Charges four, five and seven, given for plaintiff, are misleading.

Of the chages requested by defendant, and refused, ten in number, all should have been given, except four and five.

Reversed and remanded.